# IN THE COURT OF APPEALS OF IOWA

No. 14-0753
Filed July 16, 2014

IN THE INTEREST OF K.M. and J.M. JR.,
        Minor Children,

A.M., Mother,
        Appellant,

J.M. SR., Father,
        Appellant.
_____

        Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

District Associate Judge.


        A mother and father appeal from termination of their parental rights.

**AFFIRMED.**


        Darren D. Driscoll of Johnson, Kramer, Good, Mulholland, Cochrane &

Driscoll, P.L.C., Fort Dodge, for appellant-mother.

        Douglas Cook, Jewell, for appellant-father.

        Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Cori Kuhn-Coleman, County Attorney, and Ryan D. Baldridge,

Assistant County Attorney, for appellee.

        Christopher O'Brien, Fort Dodge, attorney and guardian ad litem for minor

children.


        Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

A mother and father appeal from the juvenile court order terminating their parental rights to two children.  The mother's rights were terminated pursuant to Iowa Code sections 232.116(1)(h) and (*l*) (2013).  The father's parental rights were terminated pursuant to Iowa Code sections (b), (e) and (h).  The mother argues there was insufficient evidence to satisfy the statutory grounds for termination.  The mother and father both argue termination was not in the children's best interest.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

The family has been under the supervision of Iowa Department of Human Services (DHS) since fall 2010, when K.M. was born testing positive for methamphetamine.  The mother also tested positive for methamphetamine. DHS has been offering substance abuse services to the parents since that time.

Both parents have extensive substance abuse issues.  The mother served time in prison on drug manufacturing charges.  During this time, she lost parental rights to an older child who is now in the maternal grandmother's custody.  After the initial removal, the court returned K.M. to the parents in early 2011.  In spring 2011, the mother tested positive in several drug tests for her probation officer. She tested positive in March, April, and June 2011.  When DHS became aware of these tests, they removed K.M. from the parental home again.

In August 2011, the mother entered Jackson Recovery for substance abuse treatment.   Upon entering, the mother tested positive for methamphetamine.  She admitted she had used methamphetamine that very day

and stated she had been using methamphetamine daily. The mother also admitted she and the father had used drugs together in March 2011. In October, after an out-of-facility visit, the mother returned testing positive for ethanol. She also brought a prohibited cellular phone into the facility.

J.M. was born in fall 2011, while the mother was in drug treatment. She successfully completed the Jackson Recovery treatment program in November 2011 and entered the YWCA program, where K.M. and J.M. could reside with her. In December, the DHS worker received a phone call from the mother indicating she was upset with the YWCA counselors and other residents. On the same day, the DHS worker spoke with the YWCA substance abuse counselor, who told her the mother had left the building. The DHS worker spoke with the mother, who indicated she was in Webster City and had spent the night with a man there. The mother had left the children at the YWCA. The DHS worker instructed the mother to return to the YWCA and the mother complied. However, in January 2012, due to her complaints about the YWCA, DHS agreed to allow the mother to return to the family home with the children, so long as the father left it.

In September 2012, the mother tested positive for methamphetamine, as did both children. The court removed the children by ex parte order and placed them in foster care. DHS did not consider placement with the father an option because of his substance abuse history and lack of cooperation with testing and treatment. In September, the mother completed a substance abuse evaluation with the YWCA, which recommended intensive outpatient treatment. However,

she attended only one or two meetings, and the YWCA discharged her without successful completion. The mother relapsed in December, using drugs with the father. She planned to attend treatment at Prairie Ridge in Algona in February 2013; however the substance abuse counselor there indicated the mother had not been attending meetings, and discharged her without successful completion in March. Also in February 2013, the mother tested positive for methamphetamine and amphetamine.

In April 2013, the mother entered into a plan with DHS to set up a new substance abuse evaluation and begin treatment within thirty days. The YWCA had accepted the mother for treatment, but the mother failed to appear for her scheduled evaluations, and the YWCA withdrew the offer. In May, the mother tested positive for methamphetamine and amphetamine and admitted to using drugs with the father. Also in May, the mother and father together saw the children at visitation at the Families First office. They began fighting, and DHS removed the children from the room and ended the visitation. At that time, the mother had no permanent home.

In October 2013, the mother signed a "contract of expectations" with DHS that required her to begin substance abuse treatment. The mother completed a substance abuse evaluation with Community and Family Resources in December; but in January, the resources center indicated the mother performed the evaluation but never returned to begin the recommended treatment.

Throughout this case, the court has ordered the father to obtain substance abuse treatment. His only attempt at treatment occurred in September 2011 when he completed an evaluation with Community and Family Resources. Although he attended some treatment, he refused to give urine samples on multiple occasions. In October 2011, he tested positive for methamphetamine, amphetamine, and marijuana. In November, he refused to give a sample, but admitted he would test positive for marijuana. Shortly thereafter, he was unsuccessfully discharged from treatment. Throughout the case, the father has visited infrequently with the children. He was not present for J.M.'s birth. He did not see the children at all between September and December 2013. The DHS worker testified the father does not understand child development and has unrealistic expectations for the children's abilities relative to their ages. Because of this, their behaviors easily frustrate him. The DHS worker noted he did not interact with the children during visitation and displayed no attachment to them.

In December 2013, the State filed a petition to terminate parental rights, consistent with DHS's recommendation. The hearing on the petition was set for February 5, 2014. On the morning of the hearing, the court was informed the mother's counsel had a conflict of interest and would need to withdraw. The court granted the motion to withdraw and continued the trial to March 26, 2014.

At the termination hearing, the mother reported she had been attending Narcotics Anonymous meetings for about one month. She testified the last time she used drugs was December 2013. In March, she moved into her own apartment and obtained a part-time job. Also in March, the mother and father

visited with the children in the mother's home. DHS had to end the visit and remove the children because the mother and father were fighting. At the time, the father reported he was not seeking substance abuse treatment and was not employed.

The children have been in the same foster home since September 2013. DHS notes they have been thriving in this placement, and the foster parents are providing needed stability, discipline, and love. The foster mother notes the children "are able to express their needs and wants" and "verbalize love and affection towards [the foster parents] and each other." The children have made friends at daycare and with the foster parents' nieces and nephews. The DHS worker testified the children are safe and happy in their placement. The foster parents have indicated they want to adopt the children. Both the DHS worker and foster parents note the children exhibit aggressive behaviors, such as hitting and biting, after visitation with the mother and father.

Following the hearing on the petition to terminate parental rights, the juvenile court terminated the mother's parental rights under Iowa Code sections 232.116(1)(h) and (*l*). The court terminated the father's parental rights under Iowa Code section 232.116(1)(b), (e), and (h). The mother and father appeal separately.

## II. STANDARD OF REVIEW.

We review termination of parental rights proceedings de novo. *In re A.B.*, 615 N.W.2d 764, 773 (Iowa 2012). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not

bound by them. *Id.* Our primary consideration is the best interest of the child. *Id.* at 776.

## III.  ANALYSIS.

In determining whether to terminate parental rights, the juvenile court follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a statutory ground for termination exists under Iowa Code section 232.116(1). *Id.* Second, the court must give consideration to the child's best interests. *See* Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 39. Finally, the court need not terminate parental rights if it finds any of the statutory exceptions under Iowa Code section 232.116(3) apply. *P.L.*, 778 N.W.2d at 39.

### A.  Mother.

The mother argues there was insufficient evidence to terminate under the statutory grounds alleged. We will uphold the termination of parental rights where there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate on one of the paragraphs to affirm. *In re J.A.D.-F.*, 776 N.W.2d 879, 884 (Iowa Ct. App. 2009). Here, we focus on the

evidence supporting the court's termination of the mother's parental rights under Iowa Code section 232.116(1)(h).[1]

The mother argues there was not clear and convincing evidence the children could not be returned to her custody. The mother has a serious substance abuse problem, including a long history of repeated relapses, and has been unable or unwilling to remain sober for any extended period of time. She repeatedly tested positive for drugs throughout this case, even while in treatment programs, and has exposed the children to drugs as well. This is the case despite DHS being involved and offering her services since 2010, and despite the mother previously losing custody of another child for the same reasons. Her eleventh-hour attempts at seeking treatment are insufficient, particularly in light of her long history of relapses. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000); *In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994). We are reinforced in this view by the fact that she did not begin attending NA, or obtain an apartment, or obtain a job until after the original termination hearing was continued. At the time of the termination hearing, the children had been out of her care for about eighteen months—nearly half K.M.'s life and most of J.M.'s life. Yet, the mother has made little progress toward resolving the issues that led DHS to remove the children from her care. The children would not be safe in her care. We find, therefore,

---

[1] To terminate parental rights under Iowa Code section 232.116(1)(h), the State must show by clear and convincing evidence the child is three years old or younger, has been adjudicated a child in need of assistance, has been removed from the parent's care for at least the last six consecutive months or at least six of the last twelve months, and cannot be returned to the parent's custody at the time of the termination hearing.

that the evidence is clear and convincing that the children cannot be returned to her.

The mother further argues it would not be in the children's best interest to terminate her parental rights. In considering their best interests we weigh the children's safety; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional needs. *See* Iowa Code § 232.116(2). In light of the risks posed by the mother's substance abuse issues, the length of time they have been out of the mother's care, and the mother's inability or unwillingness to put their needs above hers, the children's best interests weigh in favor of termination. Accordingly, we affirm termination of the mother's parental rights.

**B.     Father.**

The father does not dispute any of the statutory grounds for termination of his parental rights. His sole argument is that termination was not in the children's best interest. He argues the juvenile court should not have terminated the mother's parental rights and should have allowed him to remain a "non-custodial parent." He "believes the children belong with their mother" and are bonded with the mother. He argues he is "not a problem" as a "non-custodial parent."

There is no question of the father remaining a "non-custodial parent"; Iowa law does not provide for such a status in the context of termination of parental rights. The father presents no argument for why it is not in the children's best interests to terminate his parental rights and he has no standing to argue in favor of the mother's parental rights. He does not claim to have any bond with the

children himself, and the evidence does not support the existence of one. Accordingly, we affirm termination of the father's parental rights.

## IV.    CONCLUSION.

We affirm termination of the mother's parental rights under Iowa Code section 232.116(1)(h), and determine it is in the children's best interests to terminate the parental rights of both parents.

**AFFIRMED.**