# IN THE COURT OF APPEALS OF IOWA

No. 16-1578
Filed November 23, 2016

**IN THE INTEREST OF A.B., A.B., M.B., and J.B.,**
**Minor children,**

**C.B., Mother,**
        Appellant,

**J.B., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

District Associate Judge.


        The mother and father appeal separately the termination of their parental

rights to their four minor children.  **AFFIRMED ON BOTH APPEALS.**


        Derek J. Johnson of Johnson & Bonzer, P.L.C., Fort Dodge, for appellant

mother.

        Neven J. Conrad of Baker, Johnsen, Sandblom & Lemmenes, Humboldt,

for appellant father.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Marcy J. Lundberg of Lundberg Law Firm, Des Moines, guardian ad litem

for minor children.


        Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

A mother and father appeal separately the termination of their parental rights to their four children, ranging in ages from two to ten years old. We review the juvenile court's decision to terminate de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

**I. Father's Appeal.**

The Iowa Department of Human Services (DHS) became involved with the family in January 2013. At that time, there were concerns about the father's perpetration of domestic violence against the mother, as well as drug use by the parents. At one point in 2013, the father admitted to using methamphetamine.

On June 1, 2014, while the family was still receiving services, the father participated in a home invasion during which he got into a physical altercation with the resident, who was stabbed. The father was arrested and charged, and he ultimately pled guilty to robbery in the second degree and entered an *Alford* plea to the charge of attempted murder. He was sentenced to thirty-five years' imprisonment and is required to serve seventy percent of the sentence before becoming eligible for parole. At the termination hearing, the father testified that his anticipated release date is in 2044.

At the State's request, the juvenile court waived the requirement that the State make reasonable efforts to reunify the children with the father. Following the termination hearing, the court terminated the father's parental rights to the children pursuant to Iowa Code section 232.116(1)(j) (2015). Section 232.116(1)(j) allows the court to terminate when:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
>
> (2) The parent has been imprisoned for a crime against the child, the child's sibling, or another child in the household, or the parent has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years.

We first consider the father's claim the juvenile court improperly granted the State's request to waive reasonable efforts, pursuant to Iowa Code section 232.102(12)(a). The court "may waive the requirement for making reasonable efforts" if the court "determines by clear and convincing evidence that aggravated circumstances exist." *See* Iowa Code § 232.102(12). The existence of "aggravated circumstances" may be indicated in a number of ways, one of which is when the "parent has abandoned the child." *See id.* § 232.102(12)(a). Here, the father argues that he has not abandoned the children; he maintains he has consistently contacted DHS and asked to have visits and contact with the children since he was imprisoned.

Even if the father has not abandoned the children, we do not believe the district court was wrong to waive reasonable efforts. First, we note that the father's parental rights were terminated pursuant to section 232.116(1)(j), which does not implicate the reasonable-efforts requirement. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (noting that subsections 232.116(1)(c), (d), (e), (g), and (k) "contain the dual elements of parental unfitness and the failure of the parent to become minimally fit to parent the child within a specific period of time in which our legislature has determined a child needs a permanent home"). Additionally, it is unclear what efforts DHS could or should have made toward

reunifying the children with their father; even the youngest will be well past reaching majority when the father becomes eligible for parole.

The father does not directly challenge the court's determination that the statutory grounds for termination had been met. Rather, he urges us to find a six-month extension is warranted because it is likely the mother could take custody of the children at that time. The father does not have standing to assert arguments on behalf of the mother, *see In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007), and we do not consider any such arguments.

Finally, the father maintains the termination of his parental rights is not in the best interests of the children. The family's care coordinator testified that all four of the children are doing "extremely well" in their pre-adoptive home. The children have acclimated to the family; they consider their foster parents "mom" and "dad" and "they refer to the other children in the home as their siblings." Additionally, "it's a very stable home that they've thrived in and they continue to grow and they feel safe and comfortable and are making good progress to be normal, well-socialized kids." The father is not in a position to care for the children any time in the near future, and the children need stability now. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) ("[A] child's safety and his or her need for a permanent home [are] the defining elements in a child's best interests."). Termination is in the children's best interests.

We affirm the juvenile court's termination of the father's parental rights to each of the four children.

**III. Mother's Appeal.**

The mother challenges the juvenile court's decision to waive reasonable efforts as well as its finding that termination was appropriate under Iowa Code section 232.116(1)(b) and in the best interests of the children.

The mother participated in services at DHS's direction from early 2013 until December 2015. In the almost three years that she was involved, the mother received services to deal with her use of methamphetamine and marijuana, and her mental-health diagnoses, including bipolar disorder, manic depression, and severe depression. By late 2015, DHS was getting ready to end its involvement with the mother and the children.

Then in November 2015, the mother began dating a new paramour. Without the approval of DHS, she allowed the man to move into the family home. When DHS learned of her actions, they told the mother the paramour was not allowed to stay in the home until DHS could complete a criminal background check on the man. At the time, the mother knew the boyfriend was a convicted felon who was not likely to pass the background check. The next day, December 22, 2015, the mother and the boyfriend voluntarily left the children at a foster home. The day after that, they moved to Missouri.

The mother had no contact with DHS from when she left the state until May 9, 2016, when she left a message stating she would call back within a week in order to reengage in services. The mother did not contact DHS again until July 6. In the meantime, the mother missed the removal hearing and the child-in-need-of-assistance adjudication for the youngest child. She did not contact the

children or the foster parents at all. She reached out to the care coordinator a few times, but whenever he urged her to contact DHS, she refused to do so.

Between December 2015 and July 2016, the mother attempted suicide. After she was released from the hospital, she did not engage in mental-health treatment. Additionally, she was arrested for theft in the second degree and spent forty-two days in jail. She received probation and a suspended five-year sentence. At the time of the termination hearing, in late July and early August, the mother was unemployed, did not have housing, had not reengaged in mental-health treatment, and had not had contact with the children since she left them at the foster home.

At the State's request, the juvenile court waived the requirement that the State make reasonable efforts to reunify the children with the mother. Following the termination hearing, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(b), which allows the court to terminate when "[t]he court finds that there is clear and convincing evidence the child has been abandoned or deserted."

We first consider the mother's claim that the juvenile court wrongly waived reasonable efforts by finding aggravated circumstances pursuant to section 232.102(12)(a)—when the parent has abandoned the children. Section 232.2(1) defines the "abandonment of a child" as "the relinquishment or surrender . . . of the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced."

The mother maintains the court's finding that she had abandoned the children was not supported by the evidence because she "never directly expressed a desire to be relieved of her parental duties and responsibilities." We disagree. The mother evinced her intention to abandon the children when she voluntarily left them at a foster home. The mother could have remained living in the family home with the children, but she chose to leave the state with her felon boyfriend instead. The mother then went more than six months without contacting the children. *See* Iowa Code § 232.2(1) (noting that the relinquishment or surrender of parental rights need not be over any particular period of time to constitute abandonment). The first time she expressed a desire to see or communicate with the children was when she contacted DHS on July 6, 2016. In the meantime, she did not provide for the children emotionally or financially. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) ("[P]arental responsibilities include more than subjectively maintaining an interest in a child. The concept requires affirmative parenting to the extent it is practical and feasible in the circumstances."). While she was gone, the children were concerned for their mother's wellbeing. They worried about when or if she would return, and neither DHS nor the foster family could give them an answer because of the mother's refusal to communicate. The children had to receive therapy to help them deal with their mother's absence. We agree that the State proved aggravating circumstances existed and reasonable efforts could be waived.

Next the mother challenges the court's ruling that the statutory grounds have been met. The court terminated the mother's parental rights under section 232.116(1)(b), finding clear and convincing evidence the children had been

abandoned or deserted by the mother. "'Desertion' means the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship." Iowa Code § 232.2(14). "Proof of desertion need not include the intention to desert, but is evidenced by the lack of attempted contact with the child or by only incidental contact with the child." *Id.* Here, it is undisputed the mother had no contact or attempted contact with the children from December 22, 2015, through July 6, 2016. The mother deserted the children.

The mother claims termination of her parental rights is not in the children's best interests. As we stated above, the children are happy and thriving with their pre-adoptive foster family. They have been attending therapy to deal with their mother's absence, and the older children have expressed a desire to be adopted by the foster family. Moreover, at the time of the termination hearing, the mother had not worked on her mental-health issues since attempting suicide in March 2016. She did not have employment or housing, and she had a suspended five-year jail sentence that could be imposed if she violated the terms of her probation. Termination of the mother's parental rights is in the children's best interests.

**IV. Conclusion.**

We agree with the district court's decision to waive the requirement the State make reasonable efforts to reunify the children with their parents. The statutory grounds for termination have been met, and termination is in the best interests of the children. We affirm.

**AFFIRMED ON BOTH APPEALS.**