**IN THE COURT OF APPEALS OF IOWA**

No. 20-0979
Filed October 7, 2020

**IN THE INTEREST OF K.A.,**
**Minor Child,**

**D.A., Father,**
    Appellant,

**A.A., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Jefferson County, William S. Owens,

Associate Juvenile Judge.


A mother and father separately appeal the termination of their parental

rights. **AFFIRMED ON BOTH APPEALS.**


Ryan J. Mitchell of Orsborn, Mitchell, Goedken & Larson, P.C., Ottumwa,

for appellant father.

Mary Baird Krafka of Krafka Law Office, Ottumwa, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Patricia Lipski, Washington, attorney and guardian ad litem for minor child.


Considered by May, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

The mother and father separately appeal the termination of their parental rights to their child, K.A. The juvenile court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2020).

### I. Background

K.A. first came to the attention of the Iowa Department of Human Services (DHS) in December 2018 after DHS employees learned the parents may have used methamphetamine in K.A.'s presence. K.A.'s father told a DHS worker he had used methamphetamine recently. The mother initially denied using methamphetamine, but after the father told DHS workers the mother used methamphetamine, the mother confessed she used methamphetamine the week before the DHS visit.

K.A. was adjudicated a child in need of assistance (CINA) in March 2019. Legal custody was retained by the parents, and K.A. was placed at home with DHS supervision. Soon after, K.A. and the mother moved out of the home following a domestic violence incident between the mother and father. The parents agreed to a safety plan, the terms of which prohibited the mother from having contact with the father without DHS approval. The mother and K.A. moved in with one of the mother's friends. Despite the safety plan, the mother moved back in with the father in April, and another domestic violence incident occurred between the parents later that month. K.A. was removed from the parents' care in May and placed with her maternal aunt, where she has remained throughout these proceedings.

The parents did not make the progress the DHS or juvenile court expected. Following a permanency hearing in April 2020, the juvenile court directed the State

to file a petition to terminate the parents' rights. The State filed such a petition in May. On July 1, 2020, a contested hearing was held to determine whether K.A. should be returned to the parents' care, a six-month extension should be granted, or the parents' rights should be terminated. The juvenile court terminated the parents' rights pursuant to Iowa Code section 232.116(1)(e) and (f). Both parents appeal.

## II.      Issues Presented

Both parents assert on appeal (1) additional time should have been granted to work toward reunification pursuant to Iowa Code section 232.104(2)(b), and (2) termination of parental rights is not in the child's best interests. The mother also asserts (1) the statutory grounds for termination were not met because the child could have been returned to her care at the time of the termination hearing, and (2) the juvenile court erred by denying the mother's request to continue the termination hearing to a time when the hearing could be held in person rather than by videoconference.[1] Finally, the father asserts a guardianship for the child should have been established as a less-restrictive alternative to termination of his rights.

## III.     Standard of Review

We have different standards of review for the various issues raised by the parties. Appellate review of orders terminating parental rights is de novo. *In re L.T.,* 924 N.W.2d 521, 526 (Iowa 2019); *In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002). Our primary consideration is the best interests of the children, *In re J.E.,* 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's

---

[1] Due to the COVID-19 pandemic, the termination hearing was conducted by videoconference, as permitted by supreme court order.

safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). We review the denial of a motion to continue for an abuse of discretion, which occurs "when 'the decision is grounded on reasons that are clearly untenable or unreasonable,' such as 'when it is based on an erroneous application of the law.'" *In re A.H.*, ___ N.W.2d ___, ___, 2020 WL 4201762, at *3 (Iowa Ct. App. 2020) (quoting *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018)).

## IV. Discussion

We review termination proceedings with a three-step process. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "First, we 'determine whether any ground for termination under section 232.116(1) has been established.'" *Id.* at 472–73 (quoting *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016)). If grounds have been established, we next consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. Finally, we will consider whether any of the factors described in section 232.116(3) preclude termination. *Id.* In this case, the parents raise no issue regarding the third step, so we do not address it.

### a. Statutory Grounds

The father does not dispute that statutory grounds for termination of his parental rights were established. The mother, on the other hand, argues the State did not meet its burden to show K.A. could not be returned to her care at the time of the termination hearing.

As previously mentioned, the mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(e) and (f). The mother does not cite which of these statutory grounds she challenges, but we deduce she is challenging

the ground for termination set forth in section 232.116(1)(f), as that is the only one of the two statutory grounds relied on by the juvenile court that has the element "at the present time the child cannot be returned to the custody of the child's parents." *Compare* Iowa Code §§ 232.116(1)(f)(4) (requiring a showing "at the present time the child cannot be returned to the custody of the child's parents") *and* 232.116(1)(e) (containing no such requirement). Where, as here, the juvenile court terminates a parent's rights on multiple statutory grounds, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Because the mother does not dispute the juvenile court's finding that the State has met its burden pursuant to Iowa Code section 232.116(1)(e), she has waived any challenge and we do not need to address the issue. See Iowa R. App. P. 6.903(2)(g)(3); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We therefore affirm the ruling that the statutory grounds have been met for termination of the mother's parental rights under section 232.116(1)(e).

### b.    Additional Time

Both parents argue they should have been granted additional time to work toward reunification. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue placement of the child for six more months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). The mother points to recent progress, including her plan to seek substance-abuse and mental-health treatment in the weeks following the termination hearing as well as her recent sobriety. The father asserts he underwent another substance-abuse evaluation shortly before the termination

hearing, was attending treatment as recommended, had secured safe and stable housing, and was gainfully employed.

At the time of the termination hearing, K.A. had been out of the parents' care for over a year. Except for the recent efforts the parents testified to at the termination hearing, the record shows the parents made minimal to no effort and progress towards reunification since K.A. was removed. Nearly a year before the termination hearing, the father obtained a substance-abuse assessment that recommended extended outpatient treatment. He attended one session in August 2019 and was discharged from the program in September 2019. The father claimed to have begun substance-abuse treatment a few days prior to the termination hearing, but there is no other evidence in the record to support his claim. Even if he did so, the father's eleventh hour attempts do not warrant an extension of time or prevent termination of his rights. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding efforts "of very recent origin" to be an unpersuasive "eleventh hour attempt to prevent termination"); *In re B.S.*, No. 12-1609, 2012 WL 5534169, at *3 (Iowa Ct. App. Nov. 15, 2012) ("The parents' eleventh hour attempts to prevent termination by engaging in services do no overcome their years of addiction and instability."). The mother briefly participated in substance abuse three separate times, but she was either discharged or quit each time. She left her most recent treatment attempt, in April 2020, after only forty-eight hours.

In addition to their ongoing substance-abuse struggles, neither parent has made any progress regarding mental-health treatment. Despite the DHS recommendation that she attend individual therapy, the mother did not undergo a mental-health assessment or otherwise follow through with the DHS's

recommendations regarding mental health. The DHS recommended that the father attend therapy for managing his anger, but there is no indication the father ever sought such therapy. Finally, the DHS reported that the efforts to address the domestic violence issues between the parents have been unsuccessful.

We share the juvenile court's observation that the parents should be commended for their recent efforts. However, we also share the juvenile court's conclusion that those efforts do not warrant additional time or eliminate the need to terminate the parents' rights. This is a case of too little, too late. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (concluding a parent's efforts in the last two to three months before the termination hearing were "simply too late" given the parent's lack of progress towards reunification in the eighteen months prior). Because there is no persuasive indication that the need for K.A.'s removal will no longer exist following the requested extension and because K.A. needs permanency now, additional time for reunification is not warranted.

### c.    Best Interests

Both parents argue termination is not in K.A.'s best interests. "Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the child[]'s best interests." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *In re Z.P.*, ___ N.W.2d ___, ___, 2020 WL 5268435, at *5 (Iowa 2020).

K.A. is six years old, and she has been removed from her parents' home for over a year. The parents and K.A. no longer have a strong bond. Since being placed with her maternal aunt, the father has visited K.A. twice. The mother only visited K.A. once. At the time of the termination hearing, neither parent had visited the child for over eight months. K.A. is happy and comfortable with her maternal aunt. K.A. calls her maternal aunt and uncle "mom" and "dad." K.A. deserves permanency and stability, which, in light of the unaddressed substance abuse, domestic violence, and mental health issues addressed above, the parents have been unable or unwilling to give her. We agree with the juvenile court that termination is in K.A.'s best interests.

### d.        Guardianship

The father argues a guardianship for K.A. should have been established in lieu of terminating his parental rights. We do not agree. "[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). The father does not explain why guardianship is preferable to termination apart from noting guardianship is "viable" here because of K.A.'s relative placement. Under the circumstances here, we conclude termination, as opposed to guardianship, is the best permanency option for K.A.

### e.        Motion to Continue (Hearing Held by Videoconference)

The State filed its petition to terminate the mother's and father's parental rights on May 11, 2020. The hearing on the petition was scheduled to take place on July 1, which was during a period of time when in-person proceedings were not

permitted in our court system due to the COVID-19 pandemic.[2]  As a result, the hearing was ordered to be conducted online by videoconference.  On June 30, the day before the scheduled termination hearing, the parents each moved to continue the hearing, arguing that holding the hearing online via videoconference would present difficulties for them.  The motions were addressed in a separate hearing on the same day of the termination hearing.  The juvenile court denied both motions.  In doing so, the juvenile court found, "There clearly has been sufficient time between the hearing in April 2020 and the date of the termination hearing for the parents and their attorneys to consult, go over the record in the underlying CINA proceeding, and to plan a trial strategy."  The juvenile court determined, in light of the facts of the case and the "lateness of the requests to continue the hearing," that granting the motion to continue would not be in K.A.'s best interests.

At the time the juvenile court set the termination hearing, a supreme court order was in effect that included the following provision:

> Those hearings that are set between April 6, 2020 and June 15, 2020 should either be continued until after June 15, 2020 or should ONLY be conducted by video or phone conferencing.  Uncontested hearings should use remote technology.  Contested hearings, such as a contested adjudication hearing or termination hearing, may be conducted via remote technology if all parties agree, and thereafter file a written waiver of personal appearance or waive such appearance on the record.  If one party objects to proceeding by phone, and the juvenile court believes the matter should nonetheless go forward and not be postponed, then the court can order telephonic testimony.

---

[2] COVID-19 is a virus that has created an ongoing international pandemic.  *In re A.H.*, No. 20-0654, 2020 WL 4201762, at *3, n.6 (Iowa Ct. App. July 22, 2020).  In an effort to stop the spread of the virus, Iowa "implemented emergency safeguards recommended by such agencies as the Center for Disease Control, which included social distancing and wearing of face masks.  In Iowa, many businesses were ordered closed, people were encouraged to maintain six-foot distances between one another, and gatherings of ten or more people were discouraged."  *Id.*

Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Child Welfare and Juvenile Justice Youth and Families* (Apr. 6, 2020), *available at* https://www.iowacourts.gov/collections/488 /files/1079/embedDocument/. Between the issuance of the order setting the termination hearing and the hearing date, the supreme court extended the end of the "no in-person hearings" period from June 15 to July 13, 2020. *See* Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (May 22, 2020), *available at* https://www.iowacourts.gov/collections/499/files/1093/embedDocument/.

Our court has recently held telephonic termination proceedings necessitated by the pandemic offer sufficient safeguards for the parents' interests. *A.H.*, ___ N.W.2d at ___, 2020 WL 4201762, at *9. Additionally, our court concluded the juvenile court did not abuse its discretion by recognizing the uncertainty surrounding when the pandemic will end and holding the termination hearing electronically. *Id.* ("No one could predict at that time how long the pandemic would last. The postponement of in-person hearings through supervisory orders had been extended twice."). That uncertainty continues, as evidenced by the supreme court's recent order granting juvenile courts the authority to require "any proceeding in cases under Iowa Code Chapter[] 232 . . . . includ[ing] . . . terminations of parental rights" to be conducted remotely by videoconference or telephone through December 31, 2020. Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions of Coronavirus/COVID-19 Impact on Court Services* (Sept. 1, 2020), *available at*

https://www.iowacourts.gov/collections/573/files/1224/embedDocument/. Given the present circumstances and record before us, the juvenile court did not abuse its discretion by denying the motions to continue and holding the termination hearing by videoconference.

**V.     Conclusion**

For all the above reasons, we affirm the juvenile court.

**AFFIRMED ON BOTH APPEALS.**