**In the Interest of D.M. Jr. and C.M., Minor Children,**

**State of Iowa, Appellant.**

No. 93–992.

Supreme Court of Iowa.

May 25, 1994.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Kathrine S. Miller–Todd, Asst. Atty. Gen., and Ralph Marasco, Asst. County Atty., for appellant.

Cory McClure, Youth Law Center, guardian ad litem and attorney for minor children.

Robert Tucker, Des Moines, for resister mother.

Donna R. Beary, Des Moines, for father.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

LAVORATO, Justice.

In this termination of parental rights case, the juvenile court declined to terminate the rights of the natural mother and father to their two children on the grounds of abandonment. The State and the guardian ad litem appealed, and we transferred the case to our court of appeals. The court of appeals, in a 2–1 vote, affirmed the decision of the juvenile court.

We granted further review on the State's application. After an en banc consideration we denied the State's additional motion to supplement the record on appeal.

Upon our de novo review, we vacate the decision of the court of appeals and reverse the juvenile court's decree. We remand for an order terminating the parental rights of both parents.

Diane and Daniel Sr. lived together on and off for about five years. Two children were born of this relationship: Daniel Jr., born June 27, 1984, and Crystal, born June 27, 1985.

Diane first came to the attention of the Iowa department of human services in 1988. She received some services from the department. She was cooperative and, eventually, the department closed her case on a satisfactory basis.

Daniel Sr. was jailed in August 1991 on an operating while intoxicated charge. On February 25, 1992, he was paroled. That same day, Diane, Daniel Jr., and Crystal went to live at a shelter. Early on the evening of March 6, Diane left the shelter to go to therapy. Before leaving Diane signed a contract with another resident to watch her two children until she returned. Diane told her children and the resident caretaker that she would be back by 9 or 10 p.m.

Diane did not return to the shelter that night or the next day. On March 7 child protective investigator Cynthia Nelson talked to the two children. They told Nelson that Diane had often left them and they would not know when she would return, and that Diane was doing a lot of drugs.

Nelson then contacted the maternal grandmother about taking the children. She refused, stating that (1) she knew of no other relatives—including Diane's two sisters—who could take the children, (2) the children would be better off in foster care, and (3) she thought everyone in the family had "had it" with Diane and her behavior. The children were placed in emergency foster care under Iowa Code section 232.79 (1991).

On March 8 the shelter filed a missing persons report on Diane. On March 9 the juvenile court placed the children in the temporary legal custody of the department.

On March 10 Diane contacted the shelter's director. Diane attributed her absence from the shelter to the fact that she had "blacked out" for three days. According to Diane, she awoke "in a drug house and was scared."

Diane also contacted Karla McHenry, a foster care worker. Diane told her that she had seen a psychiatrist who had referred her to Iowa Methodist Medical Center. But Diane refused to (1) give McHenry her home phone number, or (2) allow McHenry to take her to Iowa Methodist. Instead, Diane told McHenry that she would call her the following morning.

That same day—March 10—school authorities wrote to juvenile court officer Lynda Pitts, expressing concern for the children's safety. On several occasions Diane had failed to pick up the children from school. One time she sent a man who identified himself as "Mouse" to pick up the children.

"Mouse" was not listed on the school's emergency sheet as a person to call in a crisis. He had liquor on his breath when he came to get the children. The letter characterizes the children's lives with Diane as "unpredictable to say the least."

On March 11 Nelson learned from McHenry that Diane was at Iowa Lutheran Hospital. Nelson contacted the hospital only to learn that Diane had simply left.

On March 13 the State filed child in need of assistance petitions on behalf of the children under Iowa Code sections 232.2(6)(b), (c)(2), and (n). Diane again contacted McHenry and gave McHenry a number where Diane could be reached. McHenry relayed the number to Nelson, whose repeated attempts to reach Diane at this number were unsuccessful. On March 16 McHenry gave Nelson yet another number for Diane. Numerous calls to this number were likewise unsuccessful.

The department finally located Diane on March 18—twelve days after she had left the children at the shelter. Again, Diane stated she had blacked out the weekend she had left the shelter. Diane indicated her doctor was going to adjust her medication to reduce the blackouts. She also stated that Daniel Sr. was with her and that they might be "back together."

On April 7 the juvenile court held an adjudication hearing. Diane attended; Daniel Sr. did not. The court adjudicated Daniel Jr. and Crystal as children in need of assistance under Iowa Code section 232.2(6)(c)(2). The court ordered that (1) the children remain in foster care, with temporary legal custody remaining in the department, (2) Daniel Sr. and Diane cooperate with the department regarding services offered, with the goal of obtaining a safe and stable environment for the children, and (3) a social investigation be completed.

The social investigation revealed that Daniel Sr. and Diane both had criminal records. Daniel had been convicted several times on operating while intoxicated charges. Diane pleaded guilty to delivery of a controlled substance in 1987 and was placed on probation. In June 1991 Diane was charged with first-degree robbery, which she testified was later dismissed. She had been convicted on three charges of prostitution since February 1991 and was on probation at the time this case arose.

A dispositional hearing was held April 20. Again, only Diane attended. The court ordered that the children remain in foster care. The court also adopted case permanency plans regarding the parents. The plans required that Daniel Sr. and Diane (1) have substance abuse evaluations, (2) complete all recommended counseling, (3) meet with the social worker every thirty days, and (4) visit the children regularly.

The department offered the parents weekly visitation with the children. Diane scheduled four visits; she attended only one. Later she failed to attend a meeting scheduled to reestablish visitation between herself and the children. Daniel Sr. failed to schedule any visits with the children and made no effort to contact the department or his children directly.

Diane spoke with the children on May 18, the day before she entered a substance abuse treatment program in Iowa City. She had to complete the program as a condition of her probation. On May 29 Diane abruptly left the program in the middle of the treatment. She did not contact her children, the department, nor her probation officer. Her whereabouts became unknown. Because she did not follow through with the substance abuse program, the court issued a warrant for her arrest.

Two review hearings were held in October 1992 and April 1993. Neither parent attended the hearings. The children continued in foster care.

On April 27, 1993—almost fourteen months after the children were placed in foster care—the State filed a petition to terminate the parents' parental rights. Daniel Sr. was served at the Mt. Pleasant correctional facility, where he had been since his parole was revoked the month before.

Because Diane had dropped out of sight, all of her known relatives were contacted. Her father, who lives in the state of Washington, told the department that Diane was

on her way to visit him, and he would tell her of the pending termination hearing.

Diane returned to Des Moines two weeks before the June 10 hearing date. Both parents testified at the termination hearing.

Following the hearing, the juvenile court (1) refused to terminate the parental rights of either parent, (2) granted Diane liberal visitation rights, and (3) gave both parents an additional six months to prove themselves and allow Diane to regain custody.

Our review is de novo. Iowa R.App. P. 4. We give weight to the district court's findings of fact but are not bound by them. *In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993).

The State sought termination of the parents' parental rights under Iowa Code section 232.116(1)(b), which pertinently provides:

1. [T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and child [when]:

. . . .

b. [t]he court finds that there is clear and convincing evidence that the child has been abandoned or deserted.

Iowa Code section 232.2(1) defines abandonment of a child as

the relinquishment or surrender, without reference to any particular person, of the parental rights, duties, or privileges inherent in the parent-child relationship. *Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced. The term does not require that the relinquishment or surrender be over any particular period of time.*

(Emphasis added.) We have characterized abandonment as "a giving up of parental rights and responsibilities accompanied by an intent to forego them." *In re Burney*, 259 N.W.2d 322, 324 (Iowa 1977). Two elements are involved in this characterization. First, the giving up of parental rights and responsibilities refers to conduct. Second, the intent element refers to the accompanying state of mind. *In re Goettsche*, 311 N.W.2d 104, 106 (Iowa 1981). In addition,

parental responsibilities include more than subjectively maintaining an interest in a child. The concept requires affirmative parenting to the extent it is practical and feasible in the circumstances.

*Id.*

Guided by these principles, we think the foregoing facts clearly and convincingly establish that both parents abandoned Daniel Jr. and Crystal.

Daniel Sr. failed to schedule or even inquire about any visitation with the children. He had no personal visits with the children during the fourteen months they were in foster care before the termination hearing. He has had no contact whatsoever with them since his incarceration in January 1993. He has provided no support for them—either before or after their placement in foster care. He (1) attended none of the staffings for the children, (2) missed most of the hearings, and (3) made no attempt to follow the case permanency plan. At the termination hearing, Daniel Sr. testified that he had made no plans for the children and had promised them nothing. Sadly, the two children are clearly not a part of their father's life.

As for Diane, her past actions suggest that she is not capable of providing long-term for the children's physical and emotional needs. Any efforts on her part to accept parenting responsibilities are of very recent origin. We see them as an eleventh hour attempt to prevent termination of her parental rights. It was only by happenstance that she even knew of the termination hearing. But for that happenstance, she probably would not even have attended the hearing.

She and her fiance returned to Des Moines only two weeks before the termination hearing. They share a small two-bedroom home with another man. This dwelling had inadequate sleeping quarters for five people. Diane frankly testified that if the children were allowed to return home with her, she would have to sleep on the floor.

In her testimony Diane gave no reason why she did not follow the requirements of the case permanency plan. She admitted she had a drug and alcohol problem when the children were adjudicated children in need of

assistance. She also admitted she had not taken advantage of the services offered by the department.

Most troubling is Diane's abrupt departure from Iowa in May 1992, when she suddenly checked herself out of the substance abuse treatment program. She maintains she fled the state as a result of an attempt on her life in Des Moines in December 1991. During the ordeal two men stabbed her repeatedly and left her for dead. She testified she left Des Moines because one of her attackers was released and she was scared. She insists that she never intended to abandon her children and she needed the twelve months she was away to get her own life back together.

The facts belie Diane's claim that she never intended to abandon her children. The record shows she made no attempt to contact the children during the entire year she spent living out of state. She made no attempt to contact the department for six months. She testified she telephoned McHenry, letting her know she was alive and living in Colorado. In the meantime the children were very concerned for Diane's safety. They repeatedly asked department personnel if they had any news of Diane.

It may be true that Diane was fearful of returning to Des Moines. Yet we cannot square her failure to contact her children with her claim that she did not intend to abandon them. There was no danger to her in making phone calls, writing letters, and sending the children cards and gifts on holidays and birthdays. There was no danger to her in periodically touching base with the department. In short, there were many simple ways that Diane could have—at no danger to herself—kept in touch with her children during her year long absence from Iowa.

Remarkably, Daniel Jr. and Crystal are growing up well in spite of their parents' behavior. They are described as "resilient, wonderful little kids." They are firmly bonded to each other because they have, for the most part, been a family unto themselves. They have adjusted well to foster care and do well in school. They are adoptable and have a chance for happiness and stability in what remains of their childhoods. It is against their best interests to return them to an uncertain future with their natural mother.

Contrary to the conclusions of the court of appeals and the juvenile court, there is—as we have said—clear and convincing evidence that Daniel Sr. and Diane abandoned their children. The best interests of these children demand that we terminate the parents' parental rights. Accordingly, we vacate the decision of the court of appeals and reverse the decree of the district court. We remand for entry of an order terminating the parental rights of Daniel Sr. and Diane.

COURT OF APPEALS DECISION VACATED; JUVENILE COURT DECREE REVERSED; CASE REMANDED WITH DIRECTIONS.