**IN THE COURT OF APPEALS OF IOWA**

No. 18-1771
Filed December 19, 2018

**IN THE INTEREST OF D.M.,**
**Minor Child,**

**V.R., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David F. Staudt,

Judge.

        The mother appeals from the juvenile court ruling terminating her parental

rights to her child.  **AFFIRMED.**

        Stephanie A. Sailer of Sailer Law, PLLC, Cedar Falls, for appellant mother.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

        Melissa A. Anderson-Seeber of Juvenile Public Defender's Office,

Waterloo, guardian ad litem for minor child.

        Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

The juvenile court terminated the mother's parental rights to D.M.—born in October 2016—pursuant to Iowa Code section 232.116(1)(g) and (h) (2018).[1] On appeal, the mother maintains there is not clear and convincing evidence to support the statutory grounds for termination and termination of her parental rights is not in D.M.'s best interests.

**I. Background Facts and Proceedings.**

The mother has a history of involvement with the Iowa Department of Human Services (DHS); her parental rights to another child were terminated in November 2015 pursuant to Iowa Code section 232.116(1)(h) (2015). In granting the State's petition to terminate the mother's rights to that child, the court found:

> [The mother] has never fully engaged in services or complied with the court's expectations. [She] has sporadically participated in the child's life. . . . [The mother] has been observed to become extremely angry while unprovoked, lashing out at those around her, including the child. . . . [The mother] admits [she has] unmet mental health needs; however, she has failed to attend numerous appointments for medication management and counseling. [She] has no showed so many times that the mental health center where she . . . attends will no longer schedule her.

The court also noted the mother's failure to actively engage in family safety, risk, and permanency services; her tendency to use her time with providers to blame them for her situation; her sporadic attendance at visits with the child; and her lack of follow through regarding a parenting class she was expected to complete.

D.M. was born in October 2016. He was the subject of two child-in-need-of-assistance assessments before he was formally removed from the mother's

---

[1] The father's parental rights were also terminated. He does not appeal.

care in July 2017. D.M. was removed after the man the mother then believed to be D.M.'s father was arrested while D.M. was in his care. The mother did not immediately resume care of D.M.; according to the temporary removal order, she "failed to pick up [D.M.] when contacted by the Clayton County Sheriff and telling them she would be there. [The mother] never left Cedar Rapids to pick up [D.M.] in MacGregor."

After D.M.'s removal, DHS expressed concerns about the mother's limited parenting skills; unmet mental-health needs; inability to maintain a stable, safe home; and associations with unsafe individuals.

At two separate visits with D.M. in November, the mother became upset and verbally aggressive. At the first of the two, which took place at a local library, the mother was ultimately asked to leave by a library supervisor because the mother lashed out at library staff and was unable to calm down. Visits were then moved to the office of the service provider. At the second visit, the mother became angry and began making disparaging remarks toward the service provider. According to the report following the incident, the mother "was observed to be in a rage, yelling, cursing and demanding to see a supervisor." A supervisor came and attempted to deescalate the situation, but the mother "called [the supervisor] names and yelled at her." As the provider drove the mother home after the visit, the mother continued to threaten to spit on the provider.

At the family team meeting following her outbursts, the mother acknowledged her improved mental health was central to reunification with D.M.

The mother obtained a mental-health evaluation, in which she was diagnosed with intermediate explosive disorder, anxiety, anger issues, depression,

and ADHD. The mother was prescribed medication to stabilize her mood and to help with anxiety and depression. She was expected to participate in mental-health counseling and medication management.

In January 2018, the court granted the mother's request to defer permanency for six months.

However, between December 17, 2017 and August 9, 2018, the mother attended just one counseling session. She did not participate in medication management, and she self-reported in August 2018 that she had not been compliant with her medications. From March 14 until May 23, the mother did not attend any visits with D.M. and did not participate in any services. During the same time period, the mother was discharged for noncompliance from the parenting class she was taking.

The termination hearing took place on September 11. The DHS worker testified that the mother had attended only 62 of 112 offered visits during the life of the case. As recently as August, the mother had ended one of her scheduled two-hour visits with D.M. early. According to the social worker's testimony, the mother "asked to end her visit earlier because she said he was too much for her and chose to end the visit earlier because he was running around and she was frustrated." In the approximately thirty days leading up to the termination hearing, the mother obtained an apartment and began attending counseling and medication management again. She had completed nine of eighteen courses in the parenting class by the time of the termination hearing.

The juvenile court terminated the mother's parental rights to D.M. pursuant to Iowa Code section 232.116(1)(g) and (h). The mother appeals.

**II. Standard of Review.**

In considering the mother's claims, we review the termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

**III. Discussion.**

We begin by considering the statutory grounds for termination. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *Id.* at 774. We consider the grounds of section 232.116(1)(g), which allows the court to terminate parental rights if all of the following are met:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The mother challenges the third and fourth elements.

She maintains there is "no question" she was willing to participate in services recommended by DHS. *See* Iowa Code § 232.116(1)(g)(3). In support of her argument, she relies upon the fact that she began the parenting class and obtained a mental-health evaluation shortly after the case was initiated. She also points to the fact that she reengaged in both shortly before the termination hearing. But the mother did not engage in any services for her mental health from mid-January through August, even though she recognized and acknowledged that her

improved mental health was central to reunification. She "disappeared" for a little over two months—from mid-March until late May—and did not participate in any services during that time, including visits with D.M. The mother obtained an apartment in August 2018, but it was unclear whether she would be able to maintain the home for any period of time. Although there were times when the mother engaged in services, she did not do so consistently. Moreover, after the court granted the mother's request in January 2018 for a delay in permanency, the mother stopped participating in services and was discharged from both the parenting class and her counseling sessions. The mother's reengagement shortly before the termination hearing is insufficient to demonstrate she is willing and able to work toward correcting the situation. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("The changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient."); *In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (discounting a parent's "eleventh hour attempt to prevent termination of her parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights.").

The mother also challenges the fourth element—that additional time would not correct the situation. *See* Iowa Code § 232.116(1)(g)(4). The mother argues that now that she has reengaged in the necessary services, she is on her way to rectifying the situation. But the mother has the same issues she had in 2015 when the juvenile court terminated her parental rights to another child. The mother did not fully take advantage of the services offered to her during the case with her first

child nor during the additional time she was given in this case when the court granted her request for deferred permanency. The mother has not engaged with services consistently, and, as a result, she cannot point to any sustained improvement. We cannot say that any additional time would enable the mother to achieve a different result.

Finally, the mother challenges whether the termination of her parental rights is in D.M.'s best interests. The mother combines her argument regarding the best interests of D.M., *see* Iowa Code § 232.116(2), and the permissive factors weighing against termination, *see id.* § 232.116(3). She maintains that because she shares a bond with the child and loves the child, her rights should not be terminated. *See id.* § 232.116(3)(c) (allowing the court to forego termination when it would be detrimental to the child due to the closeness of the parent-child relationship). Although the mother asserts in her appellate brief that she shares a bond with the child, the DHS worker testified that the mother was "reinitiating her bond" with D.M., noting that after the mother skipped all visits with D.M. for a little over two months, "when she started visitations again at the end of May, first part of June that he was not bonded with his mom." Moreover, even if D.M. shares a bond with his mother, his best interests require permanency and stability. The mother is not in a place where she is able to provide those things for him.

We affirm the juvenile court's termination of the mother's parental rights.

**AFFIRMED.**