**IN THE COURT OF APPEALS OF IOWA**

No. 23-0952
Filed August 30, 2023

**IN THE INTEREST OF R.F.,**
**Minor Child,**

**J.F., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.


　　A father appeals the termination of his parental rights.  **AFFIRMED.**


　　Richard N. Tompkins Jr. of Tompkins Law Office, Mason City, for appellant father.

　　Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

　　Jane M. Wright, Forest City, attorney and guardian ad litem for minor child.


　　Considered by Tabor, P.J., Buller, J., and Gamble, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**GAMBLE, Senior Judge.**

A father appeals the termination of his parental rights to his child. He claims (1) termination is not in the child's best interests, (2) the juvenile court should have applied a permissive exception to forgo termination, and (3) he should have additional time to work toward reunification.[1]

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. However, if a parent does not challenge any of the three steps, we need not address it on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We end our analysis by addressing any additional claims raised by a parent. *In re S.D.*, No. 22-1141, 2022 WL 3906757, at *1 (Iowa Ct. App. Aug. 31, 2022).

---

[1] The father makes a passing suggestion that the juvenile court did not have authority to place custody and physical care of the child with the mother. However, Iowa Code section 232.117(3) (2023) explicitly permits the juvenile court to place custody of a child with "a parent of the child whose parental rights have not been terminated."

The father does not challenge the statutory grounds authorizing termination. So we bypass our first step and move on to the second—whether termination is in the child's best interests. When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Taking these factors into consideration, we conclude termination is in the child's best interests.

The Iowa Department of Health and Human Services (DHHS) became involved with this family in February 2022 following concerns that the father was caring for the child while under the influence of methamphetamine. The father has a long history of methamphetamine use, which has remained a concern throughout this case.[2] He was discharged from substance-abuse treatment twice for non-attendance or noncompliance. He attempted to thwart drug testing by submitting nonhuman urine twice, and he has not submitted to testing since that time. The father admitted to using methamphetamine about a month before the termination hearing. Critically, the father refuses to acknowledge the impact his methamphetamine use has on the child's safety.

Given the father's significant, and largely unaddressed, methamphetamine addiction[3] and refusal to appreciate the dangers of parenting a child while under

---

[2] The father first used methamphetamine at age twenty-one and was thirty-two years old at the time of the termination hearing.

[3] The father has been diagnosed using the DSM-5 with stimulant use disorder-amphetamine type, severe; as well as adjustment disorder with mixed disturbance of emotions and conduct; cannabis use disorder, severe; and alcohol use disorder, severe, in sustained remission.

the influence of methamphetamine, we conclude the father cannot provide the child with a safe environment or basic stability. The impact of the father's inability to provide stability became apparent prior to termination as the child has become weary of his future relationship with the father and questions when visits will end. There is no question the father and the child share a bond of love with one another. But the risk of breaking this bond does not outweigh the risk to the child's safety. Because the father cannot provide a safe environment for the child nor the basic stability and security all children deserve, we conclude termination is in the child's best interests.

Next, we consider whether the father established a permissive exception to preclude termination. *See A.S.,* 906 N.W.2d at476 (explaining the burden of establishing a permissive exception to preclude termination is on the parent). The father points us to section 232.116(3)(a), which permits the court to forgo termination when "a relative has legal custody of the child," because the child was in the mother's legal custody at the time of the termination hearing. Yet the father provides no compelling argument as to why this exception should be applied. In fact, forgoing termination would run counter to the child's best interests. We decline to apply this exception to termination.

Finally, we address the father's request for additional time to work toward reunification. The court may grant a parent an additional six months to work toward reunification under certain circumstances. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving the parents an additional six months). In order for the

court to grant the parent additional time to work toward reunification, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The DHHS worker had numerous conversations with the father imploring him to take responsibility and engage with services before it was too late. The father made some progress toward some parenting goals during supervised visitation. But he was unable to consistently demonstrate proper parenting in order to progress beyond supervision. Further, the father now professes to appreciate he has a substance-abuse problem and is taking some steps to seek out inpatient treatment. However, we are not persuaded the father's eve-of-trial conversion is likely to result in sustained progress. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) ("Any efforts on [the parent's] part to accept parenting responsibilities are of very recent origin. We see them as an eleventh hour attempt to prevent termination of [the parent's] parental rights."); *In re K.M.*, No. 21-0520, 2021 WL 3076429, at *2 (Iowa Ct. App. July 21, 2021) ("[T]he mother made little progress on her long-standing substance-abuse issues until about two months prior to the termination hearing. Her late progress does not convince us the need for termination will no longer exist after an additional six months."). A recent substance-abuse assessment described the father as in the pre-contemplation stage of change. This leads us to believe it will take a significant amount of time,

more than six months, for the father to meaningfully address his substance abuse—the primary barrier to reunification.

**AFFIRMED.**