# IN THE COURT OF APPEALS OF IOWA

No. 24-0456
Filed May 22, 2024

IN THE INTEREST OF A.C.,
Minor Child,

C.C., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A mother appeals the termination of her parental rights to her six-year-old son. **AFFIRMED.**

Annette F. Martin, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**TABOR, Presiding Judge.**

"Chelse is a stranger to her son." That pointed, but accurate, assessment drove the juvenile court's decision to terminate her parental rights. Chelse now contests the grounds for termination and argues termination was not in A.C.'s best interests. Because our independent review of the record leads us to the same resolution as the juvenile court, we affirm.[1]

## I.      Facts and Prior Proceedings

Chelse hasn't lived with her son A.C. since he was a newborn in 2017. She resided in Georgia while A.C.'s father, Michael, moved with the child to Iowa. In October 2020, the father's housing became a concern. He and then three-year-old A.C. were sleeping in a car parked inside a friend's pole barn. Child protective services investigated and returned a founded assessment for denial of critical care. A.C. was adjudicated as a child in need of assistance (CINA). But Chelse did not come to Iowa to be with her son. Her only contact with A.C. was through a few phone and video calls. She participated in court hearings remotely. That CINA case closed in March 2022, and Michael resumed care of A.C.

But nine months later, the Iowa Department of Health and Human Services again investigated A.C.'s safety. One morning in December 2022, Michael sent then five-year-old A.C. to the lobby of the apartment building where they were

---

[1] We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, especially on credibility issues, but we reach our own conclusions based on a fresh view of the record. *Id.* The State must prove the grounds for termination in Iowa Code section 232.116(1) (2023) by clear and convincing evidence. *Id.* Evidence is clear and convincing when we harbor no serious doubts about the accuracy of the legal conclusions drawn from it. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

staying with a note that said: "Can someone just stand at the door with [A.C.] while he gets on the bus? I am sick and can barely move." A child protective worker also learned that A.C. drank rust remover he found under the sink because of Michael's poor supervision. A.C. was again adjudicated as a CINA in February 2023 and removed from Michael's custody. Again, Chelse did not come to Iowa to be with her son. So the department placed A.C. in a foster care home, where he remained. Chelse had two supervised visits with her son in the spring of 2023 when she was visiting Iowa. Otherwise, she has had "sporadic" phone and video contact with A.C. The child's guardian ad litem (GAL) reported that he "needed encouragement" to participate in phone calls with Chelse.

A.C. suffered more trauma in July 2023 when Michael died. Around that same time, Chelse visited Iowa for an uncle's funeral but returned to Georgia after about one week. Then in the fall of 2023, confronting homelessness in Georgia, Chelse returned to live with her parents in Linn County.

But by October 2023, the State had petitioned to terminate her parental rights. A month later, Chelse asked the department to set up a visit with A.C. But when the service providers contacted Chelse, she told them that "she did not want to participate and to never call her again." Chelse did not express a renewed interest in visiting A.C. until February 2024—a few weeks before the scheduled termination hearing. The department could not set up services because Chelse needed a mental-health evaluation before visits were reestablished. The department also needed to consult A.C.'s therapist about how to reintroduce the child to his mother. Another complicating factor was that Chelse had a live-in

fiancé with a criminal record who the department suspected might be unsafe to interact with A.C.

Chelse testified that she wanted more time to work on her parenting and "prove to [the department] that [she could] do better." On cross-examination, Chelse agreed that A.C. had been "through a lot with losing his dad and not having his mom really present in his life."

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1), paragraphs (b), (e), and (f). She now appeals.

## II.    Analysis

In her petition on appeal, Chelse advances two claims. (1) The juvenile court erred in terminating her rights under Iowa Code section 232.116(1), paragraphs (b), (e), and (f). And (2) termination is not in A.C.'s best interests.

For the first claim, although she mentions the statutory grounds in the heading, in the body of her argument Chelse does not address head-on the elements of paragraphs (b), (e), or (f). Nor does she specify how the State's proof fell short on any grounds. Instead, she asserts that she "loves A.C. very much and needs time to strengthen the bond with him."[2] We don't doubt Chelse's love for A.C. But that emotion does not offset the State's clear and convincing evidence that she has not maintained "significant and meaningful contact" with A.C. *See*

---

[2] Chelse's petition takes a scattershot approach, mentioning the need for "additional time" and blaming the department for not helping her find a therapist. But as the State notes, "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration." *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994).

Iowa Code § 232.116(1)(e).[3] "Significant and meaningful contact" requires, at a minimum, "affirmative assumption . . . of the duties encompassed by the role of being a parent." *Id.* § 232.116(e)(3).

During both of A.C.'s CINA cases, Chelse avoided the duties expected of parents. She did not return to Iowa to visit her son when he was placed in foster care. She did not undertake the role of comforting him when his father died. Even when she returned to Iowa, she rebuffed the service providers' offer to start visits. Her last-minute interest in building a bond with A.C. did not make up for the years of lost parenting time. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (viewing mother's "efforts . . . to accept parenting responsibilities" to be "of very recent origin . . . [and] an eleventh hour attempt to prevent termination of her parental rights"). Finding termination was proper under section 232.116(1)(e), we need not address the other grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

For her second claim, Chelse argues in the heading that termination is not in A.C.'s best interests. But in the body of her argument, she does not cite Iowa Code section 232.116(2) nor does she discuss the best-interests framework in that provision. She does cite section 232.116(3)(c), which allows the court to forgo

---

[3] Termination under paragraph (e) requires proof that (1) the child has been adjudicated CINA, (2) the child has been removed from the mother's physical custody for six consecutive months or more, and (3) the mother has not maintained significant and meaningful contact with the child during the previous six consecutive months.

termination if a parent shows by clear and convincing evidence that termination would harm the child because of the closeness of the parent-child relationship. But she does not assert that she and A.C. share a close bond.

Despite that unfocused argument, we will address A.C.'s best interests. In doing so, we consider his safety; the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2). We also weigh his integration into the foster family. *See id.* § 232.116(2)(b). A.C. has been living with his current foster parents for over a year. The GAL reported that he was "thriving" in their home. He was catching up with his developmental milestones and making academic growth. The GAL found that the foster parents did "a wonderful job of encouraging [A.C.] in reunification efforts while making him feel secure and wanted." But reunification was not A.C.'s wish. He was adamant that he wanted to stay with them and "be called by their last name." By contrast, he had "minimal memory of seeing his mother in person," according to the GAL's report.[4] And nothing in the record shows that Chelse could support A.C.'s long-term needs. Given her long absence from his life, termination of her parental rights is in A.C.'s best interests.

**AFFIRMED.**

---

[4] The reports by this GAL are thorough and insightful and help us tremendously with our de novo review of the record.