**IN THE COURT OF APPEALS OF IOWA**

No. 24-1996
Filed February 5, 2025

**IN THE INTEREST OF A.C.,**
**Minor Child,**

**E.C., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Alexander S. Momany of Howes Law Firm, PC, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Sara Strain Linder, Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of a mother and father of a six-year-old child. Only the mother appeals. She claims the State failed to establish a statutory ground for termination, argues termination is not in the child's best interests, contends the strength of the parent-child bond should preclude termination, and argues that she should at least be given additional time to work toward reunification.

We conduct a de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). The juvenile court's fact findings do not bind us, but we give them weight, especially in assessing witness credibility. *Id.* Our review follows a three-step process to determine if a statutory ground for termination has been satisfied, whether termination is in the child's best interests, and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). Then we consider any additional claims raised by a parent. *In re J.K.-O.*, No. 24-0678, 2024 WL 3290381, at *1 (Iowa Ct. App. July 3, 2024).

The juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f) (2024). Under this provision, termination is authorized when the child (1) is at least four years old, (2) has been adjudicated as in need of assistance, (3) has been removed from the parent's custody "for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days"; and (4) cannot be safely returned to the parent's custody at the time of the termination hearing. Iowa Code § 232.116(1)(f); *see also In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that

"at the present time" means at the time of the termination hearing). The mother only challenges the last element—whether the child could be safely returned to her custody at the time of the termination hearing.

We agree with the juvenile court's determination that the child could not be safely returned to the mother's custody. This family has been on the radar of the Iowa Department of Health and Human Services for a long time, starting when the child was "born with cannabinoids in her system" and more recently over concerns about the child's younger half-sibling testing positive for methamphetamine.[1] Further investigation following up on the more recent episode revealed that the mother permitted unidentified individuals access to the family home and an adult man to stay the night in the same room where the child was sleeping while the door was closed. The mother's method of controlling and disciplining the children also caused concern. The mother locked the child and her half-sibling in their room from the outside, preventing them from being able to get out. She also dragged the children across the floor by one arm, often yelling or "snapping" at them.

Despite these problems, the mother made progress to the point that she was permitted a trial home placement. But during that time the mother tested positive for methamphetamine via a sweat patch test. The mother claimed the test came back positive for methamphetamine due to incidental contact with drug residue from a friend's car when he provided the mother and her children with

---

[1] The mother's parental rights to the younger half-sibling are not at issue in this appeal. Although that child remains a child in need of assistance, a social worker explained that case will hopefully close after the parents' custody order is modified to place custody of that child with his father.

rides.[2]  Despite the positive test and the mother's farfetched explanation for it, the department allowed the trial home placement to continue under a safety plan.  But the trial home placement ended after the child reported to a school employee that the mother strangled her, covered her mouth and nose, and dug into her ribcage—which led to a founded child abuse assessment.  While the mother initially made a full denial, she later admitted to covering the child's mouth and digging into her ribs but denied putting her hands around the child's neck.  Given the child's consistent reporting of the incident, the mother's denial is not credible.

In addition to the concerns over inappropriate discipline, the mother has also struggled with her mental-health and substance-use treatment throughout this case.  A psychological evaluation recommended that the mother undergo intense individual therapy, and while she did participate in therapy, a social worker opined that the mother failed to make sustained progress with respect to her mental health over the life of the case.  The social worker explained at the termination trial that mother continues to repeatedly call caseworkers "trying to get the answer that she wants" and has "scrambled thoughts and rapid thinking."  The mother's most recent substance-use evaluation recommended she participate in extended outpatient treatment, but she only started consistently attending that treatment a couple weeks before the termination hearing.  *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding efforts "of very recent origin" to be an unpersuasive "eleventh hour attempt to prevent termination"); *In re H.S.*, No. 24-1460, 2024 WL 4762711, at *2

---

[2] The mother also claimed the test came back positive because she had sexual intercourse with her friend in his car but then later recanted that story.  The mother also posited that the test could have been positive due to her handling cash.

(Iowa Ct. App. Nov. 13, 2024) (finding efforts finally made just before the termination trial to be too late to avoid termination of parental rights).

After reviewing these facts, it is clear the child cannot safely return to the mother's custody. The State established a statutory ground for termination.

Interwoven throughout her petition on appeal, the mother challenges the juvenile court's determination that termination is in the child's best interests. When considering best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Given the litany of problems highlighted above, and particularly given the mother's recent physical aggression toward the child, we conclude that termination is in the child's best interests. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) ("[T]he child's safety and need for a permanent home are paramount concerns."). The trial home placement made clear that the child is not safe when left with the mother. Once the mother became frustrated with the child, she resorted to carrying out acts of unacceptably physically-punitive discipline against the child, which she describes in her petition on appeal as "an attempt to calm and redirect the child [that] was misconstrued." Those sentiments suggest a lack of contrition that convinces us that the child is not safe from similar future harm. Further, even if we were to believe the mother's claim that her sweat patch test came back positive

for methamphetamine due to incidental contact while her friend drove her and the child in his car—and we don't—then the mother admittedly exposed the child to a methamphetamine user and drug residue. To the extent the mother argues termination is not in the child's best interests because it would be unfair to the child to no longer have a legal relationship with the mother while her half-sibling does, we reject that argument. Our first concern is the child's safety, and that necessitates termination.

As to permissive exceptions, the mother argues the court should have applied section 232.116(3)(c) to forgo termination. *See A.M.*, 843 N.W.2d at 113 (recognizing the exceptions to termination listed in section 232.116(3) are permissive). Section 232.116(3)(c) provides the juvenile court discretion to forgo termination when the bond between parent and child is so strong that "termination would be detrimental to the child." The mother suggests that it was not proper for the juvenile court to acknowledge her strong bond with the child and then decline to preserve their legal relationship due to the nature of the bond. We disagree. It is the mother's burden to establish this exception by clear and convincing evidence. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (recognizing it is a parent's burden to prove a permissive exception under section 232.116(3)); *see also In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (requiring clear and convincing evidence to prove the permissive exception under section 232.116(3)(c)) While the record establishes the mother and child share a strong bond, the record establishes that the bond is not healthy. The social worker described the six-year-old child as trying to take on a parental or caretaker role for the mother. Of course, this is the opposite of how things should be, as the parent should be the one caring

for the young child—not vice versa.  "These unhealthy bonds should not continue."  *See In re K.M.*, No. 21-1036, 2021 WL 4593210, at *2 (Iowa Ct. App. Oct. 6, 2021).  We decline to apply section 232.116(3)(c).

Finally, we address the mother's request for additional time to work toward reunification.  The court may grant a parent six additional months to work toward reunification in lieu of termination under certain circumstances.  *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification).  But before the court may grant a parent such additional time, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  *Id.* § 232.104(2)(b).

The mother previously received multiple extensions for additional time to work toward reunification to no avail.  We have no reason to believe the mother would decide to make meaningful use of an extension now, particularly given her limited insight into how her own conduct and actions are harmful to the child.  We do not grant the mother any additional time to work toward reunification.

**AFFIRMED.**