**IN THE COURT OF APPEALS OF IOWA**

No. 25-0925
Filed August 6, 2025

**IN THE INTEREST OF N.W.,**
**Minor Child,**

**K.M., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.


A mother appeals the juvenile court's order terminating her parental rights to her child. **AFFIRMED.**


Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Sandra C. Johnson of Cunningham & Kelso, PLLC, Des Moines, attorney and guardian ad litem for minor child.


Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of a mother and father of a child born in 2023. Only the mother appeals. She makes four arguments: (1) the State failed to prove a statutory ground for termination; (2) termination is not in the child's best interest; (3) a permissive exception to termination should be applied to forgo termination due to the closeness of the mother-child relationship; and (4) she should have been given additional time to work toward reunification. We address each issue in turn.

## I. Standard and Process of Review

We review orders terminating parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). The review follows a three-step process of determining whether a statutory ground for termination was established, whether termination is in the child's best interests, and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). After addressing any challenges to the three-step process, we then address any additional claims raised by the parent. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025).

## II. Statutory Ground

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h) (2025), which permits termination upon clear and convincing evidence that: (1) the child is three years of age or younger; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) the

child cannot be returned to the custody of the parent at the present time. The mother challenges only the fourth element.

The mother testified at the termination hearing that the child could not be returned to her custody at that time. She confirmed this testimony in her petition on appeal, wherein she argues the child could be returned to her care "in the near future." Being able to have the child returned to her custody at some future time does not help the mother's cause because "at the present time," as used in section 232.116(1)(h)(4), means "at the time of the termination hearing." *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). Because the mother's testimony and appellate briefing concede that the child could not be returned to her custody at the time of the termination hearing, her challenge to the statutory ground authorizing termination fails.

## III. Best Interests

The mother argues that termination is not in the child's best interest. In assessing whether termination of parental rights is in a child's best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The mother contends that her consistent visitation has fostered a close bond with the child and that this bond weighs against termination. We are not persuaded.

At the time of the termination hearing, fourteen months had passed since the child's removal from the mother's custody. During that period, the mother struggled with alcohol abuse and untreated mental-health issues. Although she

entered inpatient treatment nine months before the termination hearing, she left the program after one month and began to drink again. The mother admitted to drinking to the point of blacking out three to seven days per week—a pattern that continued until she re-entered inpatient treatment the month before the termination hearing.

To her credit, the mother made progress in the month leading up to the termination hearing. She re-engaged in treatment and consistently attended supervised visitation with the child. While we commend these efforts, we note that this progress has come too late. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding efforts "of very recent origin" to be an unpersuasive "eleventh hour attempt to prevent termination"). Because of her failure to demonstrate sustained progress throughout the case, visitation never advanced beyond fully supervised settings. *See In re J.H.*, 952 N.W.2d 157, 170 (Iowa 2020) ("[T]here is a substantial difference between meeting a child's needs under the supervision and guidance of other people and being able to independently care for a child . . . ."); *In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The parent] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the [parent]'s care.").

In assessing the child's best interests, we recognize that the child deserves stability and permanency. The mother, who is in the early stages of addressing longstanding alcohol-abuse and mental-health issues, cannot meet those needs. After a short stint with the father after removal, the child has lived with her maternal aunt. According to multiple witnesses, including the mother, the aunt provides a

safe, stable, and supportive environment in which the child is thriving. And the aunt desires to adopt the child. *See* Iowa Code § 232.116(2)(b) (listing as a factor to consider in the best-interests analysis whether a foster family "is able and willing to permanently integrate the child into the foster family").

After our de novo review of the record, we agree with the juvenile court that terminating the mother's parental rights is in the child's best interests.

## IV. Permissive Exception

The mother also contends that termination should not be ordered due to the closeness of her relationship with the child. She relies on the exception in section 232.116(3)(c), which permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." But this exception to termination is discretionary, not mandatory, and the burden rests on the parent resisting termination to prove the applicability of an exception. *A.S.*, 906 N.W.2d at 475–76. While the record does support the existence of a bond between the mother and child, the mere presence of a bond is insufficient to preclude termination. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Instead, the focus must be on whether the child will be disadvantaged by termination and whether that disadvantage overcomes the mother's inability to provide for the child's needs. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

The mother relies on her own testimony regarding her bond with the child and her consistent visitation to support her claim. However, this is not persuasive evidence of detriment to the child. The child has been out of the mother's care for more than a year, and the issues that led to removal remain largely unaddressed.

The mother has not shown how termination would be detrimental to the child in a way that outweighs the benefits of a permanent, stable placement. We agree with the juvenile court that no permissive exception should be applied to avoid termination of the mother's parental rights.

## V.      Request for Additional Time

In the alternative, the mother argues she should have been granted an additional six months to work toward reunification. This is an option available to the court. *See* Iowa Code § 232.117(5) (permitting the court to deny termination and enter a permanency order under section 232.104); *see also id.* § 232.104(2)(b) (providing a permanency option of giving a parent an additional six months to work toward reunification). However, this option can be exercised "only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). We can make no such finding.

We acknowledge the mother has re-engaged in inpatient treatment to address her alcohol abuse and mental-health needs. She has also consistently attended supervised visits and developed a bond with the child. However, this is not her first attempt at treatment. After her first admission to inpatient treatment, the mother left the program after just one month, stating that she became overwhelmed by the possibility the child might be returned to her care. Even assuming she successfully completes her current course of treatment, the mother will still need to demonstrate sustained sobriety and stability over time before safe reunification could be possible.

As we have frequently recognized, children do not come equipped with pause buttons. *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). The child had been out of the mother's custody for fourteen months at the time of the termination hearing. Delaying permanency in the hope the mother may maintain long-term sobriety does not serve the child's bests interests. The child deserves safety and stability now—not at some uncertain point in the future. Thus, we agree with the juvenile court's denial of the mother's request for a six-month extension.

## VI. Conclusion

For these reasons, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**