# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1836
Filed January 28, 2026

————————————

**In the Interest of C.M., Minor Child,**

**E.M., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Muscatine County,
The Honorable Mark Fowler, Judge.

————————————

**AFFIRMED**

————————————

Mark J. Neary, Iowa City, attorney for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney
General, attorneys for appellee State.

Jeannette Keller of Bowman, DePree and Murphy, West Liberty, attorney
and guardian ad litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Ahlers, J.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of both parents of a child born in 2019. Only the mother appeals. She challenges the court's determination that the State proved a statutory ground for termination.

## I.      Standard and Process of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Although we are not bound by the juvenile court's fact findings, we give them respectful consideration, especially when assessing the credibility of witnesses. *Id.*

Our review follows a three-step process of determining whether statutory grounds for termination exist, whether termination is in the child's best interests, and whether an exception should apply to prevent termination. *Id.* at 294. But we do not address any step in this process that is not challenged on appeal. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

## II.     Analysis

On appeal, the mother only challenges the first step in the three-step process—whether a statutory ground exists to support termination. The juvenile court terminated her parental rights under Iowa Code section 232.116(1)(f) (2025). That section permits termination if (1) the child is four years old or older; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the parent's custody for twelve of the last eighteen months; and (4) "[t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents." Iowa Code § 232.116(1)(f). The mother only challenges the last element—whether there was clear and convincing evidence that the child could not be returned to her custody at the time of

the termination hearing. *See In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc) (recognizing "at the present time" as used in Iowa Code section 232.116(1) means at the time of the termination hearing).

The juvenile court's involvement with this family began when it was discovered that both parents were using methamphetamine while the child was in their care. As a result, the child was removed from their custody. The mother took immediate steps to address her illegal drug use. By all accounts, the mother has made great strides. She has been sober for almost two years, has maintained employment, has gone to therapy, and has consistently attended visits with the child. Unfortunately, she has been unable to clear one significant barrier that continues to undermine her reunification efforts. That barrier is her husband—the child's father.

The father has continued to use methamphetamine, drained their bank account multiple times, and physically abused the mother. In February 2024, the mother obtained a no-contact order against the father after his abuse forced her to flee to a domestic-abuse shelter. In March, the father left for inpatient treatment. While he was there, due to the mother's progress, the child was returned to the mother's custody with the condition that she would not allow the father access to the child. Unfortunately, as soon as the father left treatment, he went back to the mother's home, where he had unsupervised access to the child. Both the mother and father directed the child not to tell anyone that the father was living with them. Despite their efforts to hide the father's presence at the home, the father was arrested for violating the no-contact order.

Because the mother permitted the father to have access to the child, the juvenile court again removed the child from the mother's custody. Rather than cutting ties with the father at that point, the mother bailed him

out of jail, took steps to drop the no-contact order, and continued to live with him even though it meant she could only have supervised visits with the child. Also, despite knowing that the father tested positive for illegal drugs several times, the mother continued to deny the father's drug use. To make matters worse, the parents' home was raided by law enforcement in April 2025 when methamphetamine was mailed to their home addressed to the father.

Based on these facts, the juvenile court found that the child could not be returned to the mother's custody at the time of the termination hearing, so grounds for termination under section 232.116(1)(f) were established. *See id.* The mother challenges this finding. She contends the child could be returned to her custody at the time of the termination hearing, highlighting her progress in maintaining sobriety, employment, and housing. She also points to the fact that she has been the victim of domestic violence, and evidence was presented that it is common for such victims to make several attempts before successfully breaking free from their abusers. She contends her actions in filing for divorce from the father establishes her commitment to making that break.

Following our de novo review, we find clear and convincing evidence that the child cannot be returned to the mother's custody. We first note that we are sympathetic to the fact that the mother is a victim of domestic violence and that it is the conduct of the abuser that is the root of the problem here. Our conclusion that the child cannot be returned to the mother's custody is not an infliction of punishment on the mother for her inability to separate herself from the abusive father. Indeed, it is not the purpose of juvenile law to punish a parent for the parent's mistakes. *See In re Z.P.*, 948 N.W.2d 518, 523 (Iowa 2020) ("[J]uvenile law is not a fault-based edifice like tort law.").

Rather, it is the purpose of juvenile law to make sure a child is in a safe home. *See id.* at 523–24 (noting that national and state child welfare laws are designed to provide children with appropriate custodial care). Here, the mother's home is not safe because she has not shown the ability to separate herself from the drug-addled and abusive father. The evidence establishes that the mother has repeatedly denied the father's methamphetamine use despite clear evidence that he continued to use. The evidence also establishes that the mother has little insight into the harmful effects the father's drug use will have on the child, so we have little confidence that she can protect the child if the child were returned to her custody. *See In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021) ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists.").

We are also not persuaded that the mother's actions of filing for divorce and testifying that she now recognizes how toxic the father is to her and the child is enough to make it safe to return custody to her at this time. The mother has a track record of claiming that she is going to distance herself from the father only to later let him back into her and the child's orbit. Further, the mother's contentions are based on her testimony, and the juvenile court made stark findings that the mother's testimony was not credible, noting she "has used up any credibility she may have had." *See A.B.*, 957 N.W.2d at 293 (noting the deference the appellate court is to give to the juvenile court's credibility determinations). Given this finding, we do not place great weight on the mother's claims. We also note that the mother waited to file for a divorce for well over a year after the child was removed from her custody for giving the father access to the child and three months after she found out the father had methamphetamine delivered to the house where she resided. She also waited until the weekend before the termination hearing to remove the father's personal belongings from the house. These

5

last-minute efforts to try to demonstrate distance from the father do not persuade us that she has made the needed break from the father. Accordingly, we agree with the juvenile court that the child could not be returned to the mother's custody at the time of the termination hearing. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding efforts "of very recent origin" to be an unpersuasive "eleventh hour attempt to prevent termination").

## III.    Conclusion

Although the mother has made great strides toward bettering herself, her consistent failure to place her child's needs above the father's needs makes it clear that the child cannot be safely returned to her custody. As such, her claim that the State failed to prove a ground for termination of her parental rights fails. Therefore, we affirm the juvenile court's ruling terminating her parental rights.

**AFFIRMED.**