# IN THE COURT OF APPEALS OF IOWA

No. 24-1114
Filed September 4, 2024

**IN THE INTEREST OF J.S., G.S., and D.L.,**
**Minor Children,**

**C.S., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Patrick J. McAvan,

Judge.

A mother appeals the order terminating her parental rights to her children.

**AFFIRMED.**

Michael S. Fisher of Fisher Law Office, New Sharon, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

Misty White, Sigourney, attorney and guardian ad litem for minor children.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of the mother and fathers of three children, born in 2013, 2017, and 2018. Only the mother appeals. She contends termination was not in the children's best interests and she should be given six additional months to achieve reunification.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). The juvenile court's fact findings do not bind us, but we give them weight, especially in assessing witness credibility. *Id.*

The Iowa Department of Health and Human Services became involved with this family three times before the current proceedings—in 2017 due to the middle child being born with illegal drugs in the child's system, in 2018 due to the youngest child being born with illegal drugs in the child's system, and in 2019 due to domestic violence inflicted on the mother by the father of the youngest two children. The 2019 incident led to children-in-need-of-assistance (CINA) proceedings. The proceedings were successfully closed in 2020 after the mother underwent both mental-health and substance-use treatment.

Unfortunately, her success was short-lived. The department got involved with the family again in 2023 due to the mother's methamphetamine use, her physical abuse of the youngest child, and another incident of domestic violence against the mother by the father of the youngest two children. Because of these problems, the children were removed and CINA proceedings started. Unlike in the earlier CINA proceedings, the mother failed to address both her mental-health and substance-use issues. Due to the lack of progress, the children never returned home, and termination-of-parental-rights proceedings followed. Following a trial,

as noted, the juvenile court terminated the rights of all parents, and the mother appeals.

Our review of termination-of-parental-rights cases follows a three-step process of determining (1) whether a statutory ground for termination has been established, (2) whether termination is in the children's best interests, and (3) whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). We do not address any step a parent does not challenge. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). After addressing any challenged steps, we then consider any additional claims raised by a parent. *In re J.K.-O.*, No. 24-0678, 2024 WL 3290381, at *1 (Iowa Ct. App. July 3, 2024).

## I.    Best Interests

As to the three-step process, the mother challenges only the second step. She contends the State failed to prove it is in the children's best interests to terminate her rights because she has a close relationship with the children. While we acknowledge the mother has a close relationship with the children, our review of the record convinces us that it is still in the children's best interests to terminate her rights.

The best-interests step in the termination analysis requires us to "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *See* Iowa Code § 232.116(2) (2024). The mother's instability impedes her ability to provide for the children's safety, promote their nurturing and growth, and meet their needs.

The mother has had recurring substance-use issues for years. Unlike in the prior CINA proceedings, the mother has not addressed those issues this time. She has refused all drug testing requested by the department. The two times she tested during the fourteen months between the children's removal and the termination trial were the two times she completed substance-abuse evaluations. Both times she tested positive for illegal drugs. And both evaluations recommended inpatient treatment—treatment the mother did not undertake. In her testimony at the termination trial, the mother admitted ongoing methamphetamine use, including as recently as two days before the trial. The mother's unmitigated methamphetamine addiction alone supports a finding that termination of her rights is in the children's best interests. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."). But there's more.

The mother has also checked out in terms of complying with services. She declined to participate in solution-based programming offered to her. She also declined to obtain a mental-health evaluation despite a history of mental-health issues and the department's direction for her to obtain an evaluation. *See In re D.H.*, No. 18-1552, 2019 WL 156668, at *2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases and finding failure to meaningfully address mental-health issues to be a basis for terminating parental rights).

Overall instability is also a problem. Throughout the months leading up to the termination trial, the mother has incurred a significant number of drug-related criminal charges that make her future freedom uncertain. She also has income

instability. While she lists her employment as being a home-health aide, she has admitted to service providers that one source of her income is prostitution. This not only subjects the mother to potential harm, but also to further incarceration. The mother also has housing instability in that she is significantly behind on her rent and is at risk of being evicted from her home. She has let an individual stay at her residence who is known to be a safety risk. This overall instability has resulted in the mother never progressing to anything less restrictive than supervised visits. *See In re S.L.*, No. 19-0107, 2019 WL 1055689, at *2 (Iowa Ct. App. Mar. 6, 2019) (finding a child cannot be returned to a parent's custody when the parent has failed to progress past fully supervised visits).

The topic of visits is also an area of concern. The mother has missed a significant number of visits with the children, which has been hard on the children. While the children's angst over missed visits is an indication of the closeness of their relationships with the mother, it also demonstrates how devastating the mother's instability is to the children. And, when visits are held, the interactions have often been unhealthy, as the mother has used the visits to tell the children about adult topics such as rehab and her claims that the department has destroyed the family.

For all of these reasons, we find it is in the children's best interests to terminate the mother's parental rights. The children deserve stability now and should not have to wait to see if or when the mother will be able to meet their needs. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("[W]e cannot deprive a child of permanency after the State has proved a ground for termination under

section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *P.L.*, 778 N.W.2d at 40)).

## II.    Additional Time

The mother's final argument is that she should be given an additional six months to work toward reunification. The Code permits us to forego termination and give the mother the additional six months she requests. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order under section 232.104 if it does not terminate a parent's rights); *see also id.* § 232.104(2)(b) (permitting entry of a permanency order giving a parent an additional six months to eliminate the need for removal of the children). But in order to exercise this option, we must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The mother relies on the fact that she was scheduled to go to substance-use treatment the week after the termination trial. We echo the statements made by the juvenile court and everyone else who spoke on the topic at the termination trial in saying that we commend the mother for taking that step and hope that she carries through with her stated plans to address her addiction. But, like the juvenile court, we are not persuaded that those plans warrant granting the mother's request for additional time. First, her efforts are too late. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding efforts "of very recent origin" to be an unpersuasive "eleventh hour attempt to prevent termination"); *In re K.A.*, No. 20-0979, 2020 WL

5946114, at *2 (Iowa Ct. App. Oct. 7, 2020) ("[E]leventh hour attempts do not warrant an extension of time or prevent termination of [parental] rights."); *In re B.S.*, No. 12-1609, 2012 WL 5534169, at *3 (Iowa Ct. App. Nov. 15, 2012) ("The parents' eleventh hour attempts to prevent termination by engaging in services do not overcome their years of addiction and instability."). Second, evidence of plans for efforts in the future when no progress has been made in the past is not sufficient to permit us to make a finding that the need for removal will no longer exist after a six-month extension. It is simply too speculative. As there is no evidence in the record that would permit us to conclude that the need for removal will not exist at the end of a six-month extension, we agree with the juvenile court that such extension is not warranted.

## III. Conclusion

Termination of the mother's parental rights is in the children's best interests. There is insufficient evidence to allow us to conclude that the need for removal of the children would no longer exist at the end of a six-month extension, so we agree with the juvenile court that such an extension is not warranted. Accordingly, we affirm the juvenile court's decision to terminate the mother's parental rights.

**AFFIRMED.**