**IN THE COURT OF APPEALS OF IOWA**

No. 24-2086
Filed March 19, 2025

**IN THE INTEREST OF L.A.,**
**Minor Child,**

**S.A., Mother,**
    Appellant,

**J.A., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, Judge.

A mother and father appeal the juvenile court's order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Esther J. Dean, Muscatine, for appellant mother.

Lanny M. Van Daele of Van Daele Law, LLC, North Liberty, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Mark J. Neary, Iowa City, attorney and guardian ad litem for minor child.

Considered without oral argument En Banc.

**AHLERS, Judge.**

A child was born in 2022 with methamphetamine in her system. She remained hospitalized following her birth due to health complications. The parents had little contact with the child or hospital staff. The Iowa Department of Health and Human Services stepped in and removed the child from the parents' custody before the child was released from the hospital. Due to lack of progress by the parents in the ensuing child-in-need-of-assistance proceeding, the child has never been in either parent's care or custody. The juvenile court eventually terminated the parents' respective rights to the child. The parents separately appeal.[1]

## I.    Standard and Process of Review

We conduct de novo review of termination-of-parental-rights proceedings. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process of determining (1) whether a statutory ground for termination under Iowa Code section 232.116(1) (2023) has been established; (2) whether termination is in the child's best interest by applying the framework spelled out in section 232.116(2); and (3) whether a permissive exception under section 232.116(3) should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). We do not address any steps not raised by a parent. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). After addressing any challenged steps of the three-step process, we then address any additional claims raised by a parent. *In re J.K.-O.*, No. 24-0678, 2024 WL 3290381, at *1 (Iowa Ct. App. July 3, 2024).

---

[1] We note that the child's guardian ad litem (GAL) filed a response to the parents' petitions on appeal. We find such responses useful and encourage GALs to file responses when they are able while recognizing the time and resource burden on our juvenile-law practitioners is a potential impediment to doing so.

## II.      The Mother's Appeal

The mother makes two arguments on appeal: (1) the State failed to prove a statutory ground for termination; and (2) the juvenile court should have placed the child in a guardianship rather than terminating the mother's parental rights.  We address each in turn.

### A.      Statutory Ground

The juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(h) and (*l*).  As termination was ordered on two grounds, we may affirm if either is supported by the record.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  We focus on subparagraph (h).  Section 232.116(1)(h) permits termination upon clear and convincing proof that (1) "[t]he child is three years of age or younger"; (2) "[t]he child has been adjudicated a child in need of assistance"; (3) the child has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) the child cannot be returned to the custody of the parent.  The mother challenges only the fourth element.

Following our de novo review, we agree with the juvenile court that the child could not be placed in the mother's custody at the time of the termination hearing.  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" as used in section 232.116(1)(h)(4) to mean at the time of the termination hearing).  The child has never been in the mother's custody, as the child was removed from her custody following the child's birth due to substance-use concerns.  The mother has not made sustained progress with her substance-use problems.  She is stuck in a cycle of completing treatment and then relapsing.  She

has a history of not following through on aftercare after completing treatment—a history that was repeating itself at the time of the termination hearing.

In addition, the mother repeatedly missed drug tests demanded by the department, only completing five of twenty-nine such demands. While there may have been legitimate excuses for missing some of the demanded tests due to the mother's health problems and work schedule, there were not legitimate reasons for the mother to miss the majority of the tests requested. We presume the missed tests for which no legitimate excuse existed would have been positive for illegal substances. *In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021). This presumption was supported by the mother's addiction counselor, who acknowledged that he would view a failure to test as a failed test. Further, when the mother did test, she regularly tested positive for illegal drugs.

The mother's unmitigated substance use resulted in her failure to progress past supervised visits. As a result, the child could not be returned to her custody at the time of the termination hearing. *See In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021) ("A long history of substance abuse, repeated relapses, and demonstrated inability to maintain sobriety outside a supervised setting demonstrates the children could not have been returned to her care at the time of the termination hearing."); *see also In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) ("[The parent] never progressed beyond fully-supervised visits, which also prevented an immediate return of custody."). The juvenile court correctly found the State proved a ground for termination of the mother's rights under section 232.116(1)(h).

**B.    Guardianship**

The mother contends a guardianship should have been established for the child instead of terminating her parental rights.  While the State does not challenge error preservation on this claim, we can raise error preservation on our own initiative.  *See Top of Iowa Coop v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, [the appellate] court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal.").    The mother failed to preserve error.  She did not argue for a guardianship in lieu of termination to the juvenile court, and the juvenile court did not address the issue in its ruling.  Because the issue was neither raised nor decided, it is not preserved for appellate review.  *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Even if the mother had preserved the issue, we would not find a guardianship to be an appropriate alternative to termination in this instance.  As a starting point, a guardianship is not legally preferred to termination.  *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018).  And the child is still very young, so a guardianship would need to be in place for a long period of time, which is not a preferred permanency option.  *See id.* (noting the sixteen-year period for which the guardianship could potentially remain in place to be a factor disfavoring a guardianship in lieu of termination of parental rights).  The child's entire childhood to date has been lived in the care of her maternal grandparents, and the child is very bonded to them.  They provide for all her needs and intend to adopt the child.

There is no persuasive reason to destabilize this young child's future with the uncertainty of a guardianship on the mere hope that the mother will someday be able to safely parent when there is a much more certain option available through termination of rights and adoption. As such, we would reject the mother's argument for a guardianship in lieu of termination even if she had preserved it.

## III.    The Father's Appeal

The father makes two arguments in support of his appeal: (1) termination of his parental rights was not in the child's best interestsand (2) he should have been given additional time to work toward reunification.

### A.    Best Interests

The father argues that terminating his parental rights is not in the child's best interests because he loves the child and there is a bond between them. Though this argument conflates a best-interests argument (step two of the three-step process) with a permissive-exception argument (step three of the three-step process), we interpret his argument as a challenge under the second step.[2] Before we can proceed to address his challenge under that step, we find it appropriate to first correct a misstep in our prior cases.

---

[2] We interpret the father's bond-based argument as a best-interests argument rather than a permissive-exception argument because his issue heading referenced only best interests and that is the thrust of his argument. If the father intended to make a permissive-exception argument, his passing reference to section 232.116(3)(c) in the body of his argument without more is insufficient identification, presentment, and development of the issue to avoid waiver of it. *See In re B.D.*, No. 23-0105, 2023 WL 2671958, at *1 (Iowa Ct. App. Mar. 29, 2023) (finding a sprinkled reference to an issue without properly identifying, presenting, and developing it to be a waiver of the issue). To avoid the risk of waiving an issue, if a party intends to advance both a best-interests and permissive-exception argument, the party needs a separate issue heading and argument for each. *See* Iowa R. App. P. 6.903(2)(a)(3), (2)(a)(8).

Conflating the second and third steps based on a claimed bond with the child is not uncommon. On several occasions, we have tried to detangle the conflation by stating that the closeness of the parent-child relationship or the bond between parent and child is not a proper consideration in the best-interests analysis (step two). *See, e.g.*, *L.H.*, 13 N.W.3d at 629; *In re A.S.*, No. 24-1537, 2024 WL 5153934, at *3 (Iowa Ct. App. Dec. 18, 2024); *In re L.T.*, No. 24-1348, 2024 WL 4966040, at *4 (Iowa Ct. App. Dec. 4, 2024); *In re C.K.*, No. 24-1409, 2024 WL 4763678, at *3 (Iowa Ct. App. Nov. 13, 2024); *In re M.W.*, No. 24-1060, 2024 WL 4762708, at *3 (Iowa Ct. App. Nov. 13, 2024); *In re A.B.*, No. 24-1241, 2024 WL 4502302, at *3 (Iowa Ct. App. Oct. 16, 2024); *In re J.K.*, No. 24-1065, 2024 WL 4370055, at *3 (Iowa Ct. App. Oct. 2, 2024); *In re I.D.*, No. 24-0786, 2024 WL 4039644, at 3 (Iowa Ct. App. Sept. 4, 2024); *In re M.J.*, No. 24-1085, 2024 WL 4039564, at *3 (Iowa Ct. App. Sept. 4, 2024; *In re J.A.*, No. 24-0950, 2024 WL 3688742, at *3 (Iowa Ct. App. Aug. 7, 2024); *In re J.K.*, No. 24-0561, 2024 WL 3292695, at *3 (Iowa Ct. App. July 3, 2024); *In re N.S.*, No. 24-0750, 2024 WL 3290380, at *2 (Iowa Ct. App. July 3, 2024); *In re M.H.*, No. 24-0546, 2024 WL 2842236, at *5 (Iowa Ct. App. June 5, 2024); *In re J.S.*, No. 24-0503, 2024 WL 2842232, at *3 (Iowa Ct. App. June 5, 2024); *In re A.W.*, No. 24-0230, 2024 WL 2317429, at *3 (Iowa Ct. App. May 22, 2024); *In re R.C.*, No. 24-0411, 2024 WL 2316660, at *5 (Iowa Ct. App. May 22, 2024); *In re R.N.*, No. 24-0102, 2024 WL 2044609, at *3 (Iowa Ct. App. May 8, 2024); *In re L.L.*, No. 24-0431, 2024 WL 2045335, at *3 (Iowa Ct. App. May 8, 2024); *In re A.V.*, No. 23-1916, 2024 WL 1757554, at *5 (Iowa Ct. App. Apr. 24, 2024); *In re J.H.*, No. 23-2108, 2024 WL 1548797, at *3 (Iowa Ct. App. Apr. 10, 2024); *In re P.W.*, No. 24-0089,

2024 WL 1297049, at *3 (Iowa Ct. App. Mar. 27, 2024); *In re M.H.*, No. 23-0977, 2023 WL 5092471, at *2 (Iowa Ct. App. Aug. 9, 2023); *In re J.S.*, No. 23-0701, 2023 WL 4531766, at *9 (Iowa Ct. App. July 13, 2023); *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023); *In re L.F.*, No. 23-0189, 2023 WL 4103953, at *1 (Iowa Ct. App. June 21, 2023); *In re A.B.*, No. 23-0235, 2023 WL 3335422, at *2 (Iowa Ct. App. May 10, 2023). Upon further reflection, we determine these statements in these cases were not the clearest or best way to navigate the problem when petitions on appeal conflate these issues. Our best-interests analysis requires us to apply the framework of section 232.116(2). *P.L.*, 778 N.W.2d at 37. This requires us to consider, among other factors, the child's mental and emotional conditions and needs. Iowa Code § 232.116(2). A child's mental and emotional condition and needs is inherently impacted by the child's bond with a parent, so the parent-child bond is a relevant consideration in the best-interests analysis. As such, we hereby steer a corrective course and disavow the parts of our cases—including, but not necessarily limited to, those cited above—that state that the bond between a parent and child is not part of the best-interests analysis.[3]

Having determined that we can and should consider any claimed bond between the father and child in the best-interests step of the analysis, we proceed to the merits of the father's claim. We start by noting that the child has never been

---

[3] Of course, a parent may seek to avoid termination through a permissive exception upon establishment of "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c); *A.S.*, 906 N.W.2d at 476 (recognizing it is a parent's burden to establish a permissive exception to termination).

in the father's care or custody, and his substance-use problem has resulted in him not advancing past supervised visits with the child. These details cause us to question whether there is a significant father-child bond. At trial, the primary service provider for the family testified that she did not observe any bond between the father and the child. Based on this evidence, we find the father does not have a significant bond with the child. On top of that, the child is bonded to the grandparents who have provided for her needs throughout the juvenile court proceedings and intend to adopt. *See id.* § 232.116(2)(b). So we consider these bonds, both weak and strong, to determine what course of action will best address the child's mental and emotional conditions and needs. Following our de novo review, we agree with this assessment by the juvenile court: "[T]he child is more bonded with the child's current caretakers and in addition, due to the child's age and need for permanency, termination of parental rights is in the child's best interests." We find termination of the father's rights is in the child's best interests.

### B. Additional Time

The father contends he should be given additional time to work toward reunification. This is a statutorily permissible option. *See id.* § 232.117(5) (permitting the court to enter a permanency order under section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of granting a parent an additional six months to work toward reunification). However, to implement this option, we must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's

home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). That we cannot do.

We commend the father for completing outpatient substance-use treatment. But his completion of that treatment shortly before the third day of the termination hearing falls into the category of too little, too late. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) (finding efforts "of very recent origin" to be an unpersuasive "eleventh hour attempt to prevent termination"); *In re K.A.*, No. 20-0979, 2020 WL 5946114, at *2 (Iowa Ct. App. Oct. 7, 2020) ("[E]leventh hour attempts do not warrant an extension of time or prevent termination of [parental] rights."); *In re B.S.*, No. 12-1609, 2012 WL 5534169, at *3 (Iowa Ct. App. Nov. 15, 2012) ("The parents' eleventh hour attempts to prevent termination by engaging in services do not overcome their years of addiction and instability.").

The juvenile court previously granted the father an additional six months to work toward reunification. As part of that reprieve, the juvenile court made it crystal clear to the father that he had to submit to drug testing when requested by the department, timely complete substance-use treatment, and maintain sobriety outside the treatment setting. Despite those clear directives, as the juvenile court aptly put it, the father "stubbornly refused to engage in any and all substance abuse testing through the [d]epartment." Plus, the father did not complete treatment until eight months later and thus has not shown any ability to maintain sobriety outside the treatment setting. In addition, the father's plan was to continue to live with the mother, who was failing in her own efforts to maintain sobriety. The father's counselor testified that this living arrangement raised concerns, as being around addicts tends to be a trigger for other addicts. And, finally, during the previous six-

month extension, two other children were removed from the home because one of them tested positive for a controlled substance. Based on this evidence, we agree with the juvenile court that additional time is not warranted.

## IV. Conclusion

We affirm the juvenile court's order terminating the parental rights of both parents.

**AFFIRMED ON BOTH APPEALS.**