**IN THE COURT OF APPEALS OF IOWA**

No. 25-0291
Filed May 7, 2025

**IN THE INTEREST OF A.H.,**
**Minor Child,**

**M.H., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.


    A mother appeals the juvenile court's termination of her parental rights to her daughter under Iowa Code section 232.116(1), paragraphs (f) and (*l*) (2024). **AFFIRMED.**


    Bryan Webber of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

    Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

    Congarry D. Williams, Des Moines, attorney and guardian ad litem for minor child.


    Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SANDY, Judge.**

A mother appeals the juvenile court's termination of her parental rights to her daughter, A.H., under Iowa Code section 232.116(1), paragraphs (f) and (*l*) (2024). The mother contests the grounds for termination, argues termination is not in the child's best interests, and alternatively contends that the child should have been placed in a guardianship. Finding the grounds for termination have been met, termination is in the child's best interests, and that guardianship is not a viable alternative to termination, we affirm the juvenile court's termination of the mother's parental rights to the child.

## I. Backgrounds Facts and Proceedings

The child was born in October 2019. The father's parental rights were terminated in 2021. The child has an older maternal half-sibling born in 2008. The family originally came to the attention of the Iowa Department of Health and Human Services in 2018 due to the mother's use of methamphetamine in front of the sibling. The mother continuously tested positive for methamphetamine during those proceedings—including while pregnant with the child. The mother declined further drug testing after the child's birth. That refusal and the department's concern that the mother was continuing to use prompted the department to file a child-in-need-of-assistance (CINA) petition for the child. That case was closed when a guardianship was established with the maternal grandmother in 2021. The guardianship was closed in 2022 at the grandmother's request, and the child was returned to the mother's custody.

The department received a report in December 2022 that the mother was using methamphetamine while the child was in her care. The department set up

a safety plan with the mother, which required the child to be returned to the grandmother's care. In April 2023, the State applied for the child's temporary removal and petitioned to have the child adjudicated as a CINA. Those filings were predicated on the mother's arrest for operating while intoxicated and possession of methamphetamine and her continued refusal to drug test or otherwise engage in services offered by the department. The juvenile court adjudicated the child as a CINA in May, removed the child from the mother's custody, and ordered that the department prepare a case permanency plan.

In April 2024, a permanency hearing was held, and the department reported that the mother continued to test positive for controlled substances and refused to acknowledge her substance use. She would not engage in inpatient treatment or mental-health and substance-use services provided by the department. The department reported its belief that the mother was permitting the biological father, who has a history of domestic violence and methamphetamine use, to see the child. The juvenile court identified termination as the permanency goal, and the State subsequently filed for termination of the mother's parental rights in May.

The termination trial was held in July. The department highlighted the mother's substance use and her failure to complete treatment despite twice beginning treatment. It also expressed concern with her continued relationship with the biological father and failure to take steps to address her diagnosed mental-health issues. During her testimony, the department case worker confirmed that the mother would smoke "up to a gram" of methamphetamine a day, which she opined is "a lot of methamphetamine."

At trial, the mother testified that she has been using methamphetamine since 2013 and that she had used methamphetamine a week before trial. She claimed to have left treatment at Clearview Recovery stating, "I don't believe I needed treatment" due to "the state of the facility" "being less than standard." She claimed to have left treatment at the YWCA "[b]ecause [she] thought [she] was going to be able to have [her] daughter there with [her] after the first day, and it did not happen." She claimed to not be in treatment at House of Mercy because "they had a very long wait," although when asked if she was on the wait list, she responded, "I'm not sure. I believe so."

At trial, the mother was asked what, after nearly six years involvement with the department, would be different if the juvenile court granted more time in this case. She simply responded, "Me."

Following trial, the juvenile court terminated the mother's parental rights. The mother now appeals.

## II. Standard of Review

We review parental termination proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to, but are not bound by, the juvenile court's factual findings. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). Our paramount concern is with the children's best interests. *L.T.*, 924 N.W.2d at 526.

## III. Discussion

We review terminations of parental rights under Iowa Code chapter 232 with a three-step analysis. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Under the first step, we determine whether any ground for termination under

section 232.116(1) has been established. *Id.* If so, we then determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. *Id.* at 706–07. Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights. *Id.* at 707.

Additionally, "[w]hen the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

### A. Grounds for Termination

The mother argues the juvenile court "erred when it terminated [her] parental rights . . . pursuant to Iowa Code section 232.116(1)(f)." Specifically she contends the State did not prove by "clear and convincing evidence that the child cannot be returned to [her] custody" at the present time. *See id.* §§ 232.116(1)(f)(4), .102; *see also D.W.*, 791 N.W.2d at 707 (interpreting "present time" to mean the date of the termination hearing).

"A child cannot be returned to the custody of the child's parent . . . if by doing so the child would be exposed to any harm amounting to a new [CINA] adjudication or without remaining a [CINA]." *In re S.C.*, No. 15-0262, 2015 WL 2089743, at *2 (Iowa Ct. App. May 6, 2015).

At the time of trial, the mother had been in treatment for "mental health therapy" for three weeks at UCS Healthcare. The mother has consistently failed to take advantage of the services offered by the department over the past six years. She has twice started and quit treatment services. She could not say definitively

that she was on the waitlist for substance-use treatment at House of Mercy. Considering that the motivating factor for the department's involvement in this case is the mother's substance use, we do not believe the child can be returned to her custody at the present time. Her "eleventh hour attempt to prevent termination" by seeking treatment at UCS is even less persuasive when considering that, by her own admission, her methamphetamine use was continuing up to a week before the termination hearing. *See In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994). That reality gives us little reason to expect that "the need for removal 'will no longer exist at the end of [an] additional six-month period,'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (citation omitted), let alone that the child could be returned at the present time.

### B. Best Interests

The mother next argues termination is not in the child's best interests due to the mother-child bond and because the child is in the "legal custody of a relative." We choose to interpret the mother's mother-child bond argument as a best-interests challenge rather than as a permissive exception challenge "because [her] issue heading referenced only best interests and that is the thrust of [her] argument." *In re L.A.*, ___ N.W.3d ___, ___ n.2, 2025 WL 855764, at *3 n.2 (Iowa Ct. App. 2025). And the child is in the legal custody of the department, not a relative.

Under Iowa Code section 232.116(2), we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." The child cannot be deprived "of permanency after the State has

proven a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted). "[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted).

The mother's sole contentions supporting her mother-child bond argument are that "[n]o evidence was presented by the State denying the presence of the parent-child bond" and "both the testimony taken at trial as well as the reports admitted into evidence provided support [the m]other's assertion as to the significance of the parent-child bond"—with no citation to the record.

Although the department case worker testified that she observed "a strong bond" between the mother and the child during a visit, she also confirmed that her "recommendation today is not based upon the lack of a bond between mother and daughter, but moreover the other surrounding impacts regarding the mental health and substance abuse concerns." We agree. A strong bond cannot outweigh the consistent and significant harm the mother has introduced into the daughter's life by her consistent methamphetamine use.

As we have said before, "Methamphetamine is a scourge." *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017). "A parent's methamphetamine use, in itself, creates a dangerous environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020). In *J.P.*, we found that any benefit from the parent-child bond was outweighed by the harm

from the parent's methamphetamine use as recently as two months before the termination hearing. *See id.*

The mother has not demonstrated a history of sobriety during the child's life. She has consistently used methamphetamine, and she has not consistently cared for the child. She has failed to make use of the services offered by the department. Termination is in the child's best interests.

### C. Guardianship

The mother argues that the juvenile court should have placed the child in a guardianship rather than terminating her parental rights. "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation omitted). In addition, the mother bears the burden of convincing us of such. *Id.* at 476.

Although there are instances where guardianship is appropriate, *see id.*, such is not the case here. Guardianship has already been explored and attempted with the child's maternal grandmother. That guardianship was dissolved at the grandmother's request less than a year after being granted. We will not delay the child's permanency because, "in these circumstances a guardianship is woefully inadequate to achieve the sort of stable, nurturing and permanent home she both needs and deserves." *See id.*

We affirm the juvenile court's termination of the mother's parental rights.

**AFFIRMED.**